# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

|  |  |
|---|---|
| WILDEARTH GUARDIANS, | **CV-18-110-GF-BMM** |
| Plaintiff, |  |
| vs. | **ORDER** |
| ELAINE L. CHAO, et al., |  |
| Defendants, |  |

Plaintiff Wildearth Guardians ("Wildearth") challenges the alleged failure of the Department of Transportation ("DOT") and the Pipeline Hazardous Material Safety Administration ("PHMSA") to comply with the Mineral Leasing Act's ("MLA") directive that all oil and gas pipelines on federal lands receive at least one inspection annually.  (Doc. 1).  Federal Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. 18).  Federal Defendants argue also that Wildearth lacks standing under Article III to bring its claim.  (Doc. 19 at 21).

## I.    BACKGROUND

1

The MLA requires that "[p]eriodically, but at least once a year, the Secretary of the Department of Transportation *shall* cause the examination of all pipelines and associated facilities on Federal lands and *shall* cause the prompt reporting of any potential leaks or safety problems." 30 U.S.C. § 185(w)(3) (emphasis added). Congress later enacted the Pipeline Safety Act of 1979 ("PSA"). 49 U.S.C. § 60101, *et seq*. The PSA gives the Secretary of Transportation regulatory and enforcement authority to take actions to protect the public against risks to life and property posed by pipeline transportation and pipeline facilities. Congress specifically declined to remove from DOT the duty to cause the annual inspection of pipelines that cross federal lands when it amended the MLA, despite DOT's requests. (Doc. 23, at 2-3). The legislative history notes that "the committee struck out th[e] provision that would have removed what is now 185(w)(3)." (Doc. 23 at 3).

DOT subsequently delegated this non-discretionary duty to cause the examination of all pipelines on federal lands to PHMSA. *See* 49 C.F.R. § 1.97(a)(1). Wildearth asserts that PHMSA has failed to comply for at least six years with what the MLA requires – action causing the annual examination of all pipelines on federal lands. (Docs. 1 at ¶ 3; 23 at 17). The MLA expressly compels PHMSA, pursuant to DOT's delegation, to cause the inspection of *all* oil and gas pipelines on federal lands. 30 U.S.C. § 185(w)(3).

Wildearth alleges that PHMSA's existing inspection regulations allegedly do not appear to encompass all oil and gas pipelines that cross federal lands. *See* 49 U.S.C. § 60101(a)(21)-(22);  49 C.F.R. §§ 192.3, 195.2.  For example, the annual inspection requirements do not seem to include non-regulated rural gas gathering lines, some rural regulated gas gathering lines, oil flow lines, and certain oil gathering and transmission lines outside of high consequence areas.  49 C.F.R. §§ 192.8, 192.9, 192.705, 192.706, 195.1(b), 195.11, 195.12.  Wildearth asserts that PHMSA's failure to cause the inspection of these pipelines constitutes agency inaction.  Wildearth brings this action pursuant to the APA's "failure to act" provision set forth at 5 U.S.C. § 706(1).

Federal Defendants dispute the notion that Wildearth's claim challenges PHMSA's inaction.  Federal Defendants contend that Wildearth's complaint actually challenges PHMSA's current PSA regulations for being out-of-compliance with the MLA.  Federal Defendants argue that the court of appeals possesses exclusive jurisdiction over Wildearth's suit.  Congress provided that a person who seeks to challenge a regulation prescribed under the PSA, or an order issued under the PSA, "may apply for review of the regulation or order by filing a petition for review" in a court of appeals.  49 U.S.C. § 60119(a)(1); (Doc. 19 at 18-19).  Federal Defendants further contend that the eighty-nine-day time limit for seeking a review of a PHMSA regulation or order bars Wildearth's complaint.

3

## II.   DISCUSSION

The Court will address first whether Wildearth has standing under Article III to bring its claim.  The Court next will address whether Wildearth presents a valid "failure to act" claim pursuant to the APA.  The Court finally will analyze Federal Defendants' argument that the Court lacks subject matter jurisdiction to hear Wildearth's claim.

### A. Standing

The Court must assume at this stage that all allegations in Wildearth's complaint are true and draw reasonable inferences in its favor.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  An injury must be "concrete, particularized, and actual and imminent" in order to establish Article III standing. *Martin v. City of Boise*, 902 F.3d 1031, 1040 (9th Cir. 2018).  The injury must be "fairly traceable to the challenged action" and be "redressable by a favorable ruling."  *Id.*  In this manner Article III limits the federal judicial power "to those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process."  *Flast v. Cohen*, 392 U.S. 83, 96 (1968).

"For an injury to be particularized, it must affect the plaintiff in a personal and individual way."  *Spokeo, Inc. v. Robins*, ___ U.S. ___, ___, 136 S. Ct. 1540, 1548 (2016).  Environmental cases prove no different and thus require an injury to

the plaintiff, not to the environment. *Id.* At the pleadings stage, however, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The Court may "presume that general allegations embrace those specific facts that are necessary to support the claim." *Oregon v. Legal Serv. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009). Environmental plaintiffs "adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." *Id.*

Federal Defendants claim that Wildearth fails to allege a particularized injury that fairly can be traced to PHMSA. (Doc. 19 at 29-30). Federal Defendants characterize Wildearth's injury as simply aesthetic. *Id.* at 29. Federal Defendants assert that Wildearth must associate an alleged injury complaining of certain "sights, sounds, and smells" with particular leaking or rusted pipelines. *Id.* at 30-31. Federal Defendants argue that Wildearth must allege that at least one pipeline causing the particular "sights, sounds, and smells" must be a "flow, gathering, or transmission pipeline" and prove "PHMSA's regulations do not require annual examinations for that pipeline." *Id.* at 33.

Wildearth alleges that its members can see, hear, and smell leaking pipelines while recreating on public lands. (Doc. 1 at ¶ 17-21). These leaks and smells allegedly decrease Wildearth's members recreational enjoyment and cause them

concerns related to potential health impacts as a result of exposure to leaking pipelines. *Id.* Wildearth alleges that its injury arises from PHMSA's failure to cause the inspection of all oil and gas pipelines as the MLA requires. *Id.* (*citing* 30 U.S.C. § 185(w)(3)).

"For purposes of ruling on a motion to dismiss for want of standing," the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the [plaintiff]." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). The Court determines at this stage in the proceedings that the Wildearth alleges a sufficiently particularized injury. Wildearth alleges that its members "use the affected area" and the associated smells and sounds impact its members "in an individual way." *Spokeo Inc.*, 136 S. Ct. at 1548. The Court further presumes that the general allegations in Wildearth's complaint embraces those specific facts necessary to support Wildearth's complaint. *Legal Servs. Corp.*, 552 F.3d at 969.

Wildearth's alleged injury proves "fairly traceable to the challenged action." *Martin*, 902 F.3d at 1040. Wildearth alleges that its injury stems from PHMSA's failure to cause the annual inspection of all oil and gas pipelines as the MLA requires. 30 U.S.C. § 185(w)(3). Wildearth has provided specific examples of visits to five locations on public lands where members observed oil and gas pipelines that are subject to the MLA's inspection requirement. (Doc. 1 at ¶ 17).

6

Wildearth alleges, in effect, that if PHMSA were to cause the annual inspection of all oil and gas pipelines under the purview of the MLA, the offensive sounds and smells would not exist.

The redressability of Wildearth's alleged injury remains an issue for this Court. Wildearth seeks what amounts to mandamus relief to comply with the MLA. *See* 28 U.S.C. § 1361. The Court's decision on redressability of Wildearth's alleged injury turns on whether it possesses subject matter jurisdiction to hear Wildearth's claim. The Court will address this issue below.

### B. Whether Wildearth Properly Asserts a Failure to Act Claim Pursuant to the APA.

The Supreme Court in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004) ("*SUWA*"), analyzed an alleged failure to act by a federal agency pursuant to § 706(1) of the APA. This provision allows a party to "compel agency action unlawfully withheld or unreasonable delayed." 5 U.S.C. § 706(1). The claims at issue asserted that the Bureau of Land Management ("BLM") had failed to take action with regard to off-road vehicle use in wilderness study areas. *SUWA*, 542 U.S. at 61. The Supreme Court evaluated the limits that the APA places upon judicial review of agency inaction.

Section 551(13) defines agency action to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent thereof, *or failure to act*." *SUWA*, 542 U.S. at 62 (*quoting* 5 U.S.C. § 551(13)) (emphasis in original).

The Supreme Court cited the definitions of these categories to conclude that they "involved circumscribed, discrete agency actions." *SUWA*, 542 U.S. at 62. Section 706(1) of the APA provides relief for an agency's failure to exercise these discrete actions by allowing "[t]he reviewing court [to] . . . compel agency action unlawfully withheld or unreasonably delayed." *SUWA*, 542 U.S. at 62 (*quoting* 5 U.S.C. § 706(1)).

The Supreme Court interpreted the final term in the definition – "failure to act" – as "a failure to take an agency action," that is, "a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." *Id.*  A "failure to act" differs from a "denial." *Id.*  The Supreme Court equated a "denial" with the agency's act of saying no to a request. *Id.*  By contrast, a "failure to act" constitutes "the omission of an action without formally rejecting a request," such as the "failure to promulgate a rule or take some decision by a statutory deadline." *Id.*  The Supreme Court emphasized that "a failure to act" properly must be understood to be limited, similar to the other items in § 551(13), "to a *discrete* action." *Id.* at 62 (emphasis in original).

The Supreme Court added a final requirement to its analysis of "failure to act" claims.  Action "legally *required*" represents the only agency action that can be legally compelled pursuant to the APA. *Id.*  (emphasis in original).  Section 706(1)'s authorization for courts to "compel agency action *unlawfully* withheld"

supports this interpretation.  *SUWA*, 542 U.S. at 63 (*quoting* 5 U.S.C. § 706(1)). This provision carried forward the previous practice of the use of mandamus under the All Writs Act.  *SUWA*, 542 U.S. at 63.  Courts normally limited the mandamus remedy to the enforcement of "a specific, unequivocal command," *ICC v. New York, N.H. & H.R. Co.*, 287 U.S. 178, 204 (1932), or the ordering of a "precise definite act . . . about which [an official] had no discretion whatsoever." *United States ex. Rel Dunlap v. Black*, 128 U.S. 40, 46 (1888) (citations omitted).

The Supreme Court finally looked to the Attorney General's Manual on the APA for guidance.  According to the Attorney General's Manual, "§ 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing how it shall act.'"  *SUWA*, 542 U.S. at 64 (*quoting* Attorney General's Manual on the Administrative Procedure Act 108 (1947)) (emphasis in original).

The Supreme Court dismissed the notion of expanding the scope of § 706(1) to claims similar to "the kind of broad programmatic attack" that it had rejected in *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990).  The Supreme Court explained that the limitation of § 706(1) allows a court the narrow ability to "compel the agency to act, but has no power to specify what the action must be."  *SUWA*, 542 U.S. at 65.  As an example of a potentially valid "failure to act" claim the Supreme Court cited a challenge pursuant to 47 U.S.C. § 251(d)(1).  *Id.* at 65.  This

provision requires the Federal Communications Commission "to establish regulations to implement" interconnection requirements "[w]ithin 6 months" of the date of enactment of the Telecommunications Act of 1996. *Id.* This provision would support a judicial decree under the APA to require simply the prompt issuance of a set of regulations. This provision would not support a judicial decree "setting forth the content of those regulations." *Id.*

The Supreme Court concluded its analysis with a few examples of efforts to compel compliance with broadly subjective statutory mandates that improperly would inject the judge into the day-to-day agency management. These examples included an allegation that the Secretary had failed to "manage wild free-roaming horses and burros in a manner that is designed to achieve and maintain a thriving natural ecological balance." *Id.* Other examples would be an alleged failure to "manage the [New Orleans Jazz National] [H]istoric [P]ark in such a manner as will preserve and perpetuate knowledge and understanding of the history of jazz," or to "manage the [Steens Mountain] Cooperative Management and Protection Area for the benefit of present and future generations." *Id.*

The MLA requires that "[p]eriodically, but at least once a year, the Secretary of the Department of Transportation *shall* cause the examination of all pipelines and associated facilities on Federal lands and *shall* cause the prompt reporting of any potential leaks or safety problems." 30 U.S.C. § 185(w)(3) (emphasis added).

10

This provision clearly directs the taking of an action – causing the examination of pipelines on federal lands – at least once a year. *SUWA*, 542 U.S. at 62.  The DOT delegated this non-discretionary duty to cause the examination of all pipelines on federal lands to PHMSA. *See* 49 C.F.R. § 1.97(a)(1).  The MLA legally requires PHMSA to take a *discrete action* – i.e., to promulgate a rule, order, or regulation – to cause the annual examination of all pipelines.  30 U.S.C. § 185(w)(3).

Section 706(1) of the APA allows a party to "compel agency action unlawfully withheld or unreasonable delayed."  5 U.S.C. § 706(1).  A "failure to act" claim proves proper when the agency fails "to promulgate a rule or take some decision by a statutory deadline." *SUWA*, 542 U.S. at 63.  Section 185(w)(3) requires PHMSA to cause the inspection of pipelines annually.  30 U.S.C. § 185(w)(3).  Wildearth alleges that PHMSA has failed to take this required action.  PHMSA's regulations allegedly incorporate examinations of only some gathering lines and transmission lines. *See* 49 U.S.C. § 60101(a)(21)-(22); 49 C.F.R. §§ 192.3, 195.2.

Wildearth asserts properly a failure to act claim pursuant to § 706(1). *SUWA*, 542 U.S. at 64.  PHMSA stands legally required to cause the annual inspection of all pipelines that cross federal lands.  Wildearth alleges that PHMSA's current regulations fail to meet this requirement.  The Court properly could order PHMSA to take an action to comply with its non-discretionary duty.

11

*SUWA*, 542 U.S. at 64 (*quoting*, Attorney General's Manual on the Administrative Procedures Act 108 (1947)).  The Court would not be able, however, to direct PHMSA how it may or should cause this annual inspection.  *Id.*

The Ninth Circuit's decision in *Hells Canyon Preservation Council v. U.S. Forest Service*, 593 F.3d 923, 933 (9th Cir. 2010), commands no different result. The Ninth Circuit rejected a failure to act challenge under the APA to the Forest Service's alleged failure to close certain trails in a wilderness area to motorized use, as required by statute.  *Id.*  The Forest Service, in fact, had closed portions of the trails within the wilderness area boundaries.  The Ninth Circuit characterized the plaintiff's challenge as one to the Forest Service's definition of the wilderness area boundaries as opposed to any alleged failure to comply with the statute.  *Id.* The Ninth Circuit agreed that plaintiffs might have been able to assert failure to act claims pursuant to § 706(1) if the Forest Service had failed to close wilderness area trails to motorized use or had failed to define the wilderness area's boundaries. *Hells Canyon Preservation Council*, 593 F.3d at 932-33.  The Ninth Circuit instead dismissed plaintiff's challenge to the Forest Service's alleged arbitrary and capricious action in defining the boundaries of the wilderness area.  *Id.* at 933.

### C. Whether the Court Possesses Jurisdiction to Hear Wildearth's Claim.

Federal Defendants rely on a number of decisions to support its claim that this Court lacks jurisdiction to hear Wildearth's claim.  *See Ruud v. U.S. Dept. of*

*Labor*, 347 F.3d 1086 (2003); *see also California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908 (9th Cir. 1989).  Congress has authorized the federal courts to exercise subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331. Subject-matter jurisdiction "involves a court's power to hear a case."  *United States v. Cotton*, 535 U.S. 574, 583 (2002).

### 1.  Whether Congress provided exclusive jurisdiction to the court of appeals to hear Wildearth's complaint.

A party seeking review of an agency action or inaction first must seek the remedy in the district court rather than a court of appeals, unless a statute provides otherwise.  *Int'l Bhd. of Teamsters v. Pena*, 17 F.3d 1478, 1481 (1994).  Congress may provide exclusive jurisdiction to the courts of appeal through express statutory language.  *Yeutter*, 887 F.2d 908.  The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court *sua sponte*, at any stage in the litigation pursuant to Fed. R. Civ. P. 12(b)(1).

Congress has provided that a person harmed by a regulation or order prescribed pursuant to the PSA may apply for review of the regulation or order by filing a petition "in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business."  49 U.S.C. § 60119(a)(1). The statute provides also that "[t]he petition must be filed not later than eighty-nine days after the regulation is prescribed or order is issued."  *Id.*  Federal Defendants

argue that the judicial review provision of the PSA illustrates that "Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power." *Telecommunications Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 77 (D.C. Cir. 1984).  The MLA provides no similar vehicle for appellate court review, however, and this Court possesses original jurisdiction over a failure to act challenge to the MLA.  *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1342 (9th Cir. 1995).

Wildearth's complaint presents the issue of whether this action must be heard in the court of appeals, pursuant to 49 U.S.C. § 60119(a)(1), and whether the eighty-nine-day limit to challenge the PSA's regulations restricts this suit's reviewability in the court of appeals to such a degree as to support this Court's exercise of original jurisdiction.  Dual-authority cases consider questions of law pursuant to multiple statutes that provide jurisdiction to both the district courts and the court of appeals.  Several circuits to address this question have determined that considerations of judicial economy and consistency justify review of the entire proceeding by the court of appeals where one statute provides review to the court of appeals.  The case before this Court, however, provides a unique situation that differs from these decisions.

> **2. Courts of appeal have exercised jurisdiction over dual-authority cases when they have the benefit of a fully developed administrative record.**

The petitioner in *Ruud*, 347 F.3d 1086, raised concerns about unsafe designs, quality assurance, and environmental and radiological requirements and conditions at the Westinghouse Hanford nuclear facility.  The petitioner filed a whistleblower complaint before the Department of Labor's Administrative Review Board ("ARB") alleging retaliation, harassment, and discharge by Westinghouse Hanford. *Id.* at 1087.  The petitioner entered into a settlement agreement, but the ARB initially did not approve the settlement.  *Id.*  The petitioner later sought to have the settlement disapproved.  *Id.*

Years of administrative wrangling ensued.  ARB entered a final determination against the petitioner.  The petitioner sought review of the ARB's decision to approve the claim settlement directly with the Ninth Circuit.  *Id.*  The ARB had decided the claim pursuant to the authority of both the Clean Air Act ("CAA") and the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA").  *Id.*

The Ninth Circuit considered whether it could exercise jurisdiction where an agency decision had been "rendered pursuant to both the agency's authority under a statute providing for original jurisdiction in the district court and its authority under a statute providing for immediate review in the court of appeals." *Id.* at 1088.  The CAA provides for immediate review of an agency decision in the court of appeals.  *Id.*  CERCLA does not.  *Id.*  The Ninth Circuit explained, however,

15

that the two issues prove so closely interrelated in some instances that they should be heard in a single forum. *Id.* at 1090. The Ninth Circuit likened this situation to the exercise of supplemental district court jurisdiction and pendent appellate jurisdiction. *Id.*

The Ninth Circuit noted that consolidated review in the court of appeals made sense considering the relative positions of appellate courts and district courts. An appellate court possesses "clear appellate jurisdiction even when the district court has exclusive original jurisdiction," whereas the converse is not true. *Id.* (*quoting Int'l Bhd. of Teamsters*, 17 F.3d at 1482). Moreover, in such circumstances "a district court offers no advantage over a court of appeals with respect to on-the-record review of completed administrative proceedings." *Ruud*, 347 F.3d at 1090 (*citing Shell Oil Co. v. Fed'l Energy Regulatory Comm'n*, 47 F.3d 1186, 1195 (D.C. Cir 1995)). The Ninth Circuit concluded that it should accommodate a petition to review an agency decision made pursuant to two or more statutes, at least one of which provides for direct review in the courts of appeals, and where the petition involves shared factual and legal issues. *Ruud*, 347 F.3d at 1090. "Consolidated review of such a petition avoids inconsistency and conflicts between the district and appellate courts while ensuring the timely and efficient resolution of administrative cases." *Id.*

16

Wildearth's claims regarding PHMSA's inspection regulations and PHMSA's alleged noncompliance with the MLA differs from *Ruud*.  The Ninth Circuit in *Rudd* possessed a fully developed administrative record to review.  The ability to review completed administrative proceedings provided the Ninth Circuit with the ability to dispose entirely without the involvement of the district court.  *Id.* We possess no administrative record here.  The absence of an administrative record in this case demonstrates that dual-authority does not apply pursuant to *Ruud*.  The only authority at issue in this case is this Court's ability to review the agency's alleged failure to act pursuant to § 706(1) of the APA.  The Ninth Circuit would be in no position to develop an evidentiary record of the failure to act allegations contained in the complaint.  Consolidated review would not be appropriate in this case and dual-authority does not exist.

Other circuits that have addressed this dual-authority question have reached results similar to *Ruud*.  In *Sutton v. U.S. Dep't of Transp.*, 38 F.3d 621, 625 (2d Cir.1994), the appellants sought relief pursuant to the APA, the National Environmental Policy Act, and the Airport and Airway Improvement Act from the Federal Aviation Administration's ("FAA") decision to approve funding for an airport expansion.  *Id.*  The district court determined that the court of appeals possessed exclusive jurisdiction to review the FAA's decision because the decision had been made pursuant to Chapter 20 of the Federal Aviation Act.  *Id.*  Chapter 20

17

of the Federal Aviation Act provides the court of appeals with exclusive jurisdiction. *Id.* at 624.

Appellants argued on appeal that the case could be bifurcated and challenged in separate forums, or that the whole matter properly could be heard in the district court because the FAA had not relied entirely on Chapter 20 of the Federal Aviation Act in making the decision. *Id.* at 625. The court of appeals possesses exclusive jurisdiction "to review FAA determinations based in substantial part on Chapter 20 of the Act . . . without regard to the other substantive claims asserted." *Id.* The Second Circuit's decision to exercise jurisdiction mirrors the reasoning in *Rudd*. The court of appeals represented a proper forum due, in large part, to the ability of the court of appeals to review the fully developed administrative record and to serve "coherence and economy." *Sutton*, 38 F.3d at 625-26 (*citing City of Rochester v. Bond*, 603 F.2d 927, 936 (D.C. Cir. 1979)).

The D.C. Circuit in *Int'l Bhd. of Teamsters v. Peña,* 17 F.3d 1478, 1481-82 (D.C. Cir. 1994), analyzed a jurisdictional knot where an agency had issued a rule pursuant to the authority of two statutes providing for separate paths of judicial review. The petitioners sought review of the Federal Highway Administration ("FHWA")'s Implementing Rule pursuant to the APA, the Omnibus Trade and Competitiveness Act, and the Safety Act. *Id.* at 1481. The FHWA exercised an authority purportedly transferred by the Interstate Commerce Commission

18

("ICC").  *Id.*  The court of appeals possesses exclusive jurisdiction to review ICC

rules pursuant to 28 U.S.C. § 2342(5).  *Id.*  The district court possesses exclusive

jurisdiction to review actions pursuant to the Safety Act.  *Id.*

The D.C. Circuit determined that the FHWA's reliance on both the Safety

Act and the ICC provided the court of appeals with the authority to exercise

jurisdiction over the petition as a whole.  *Id.* at 1482.  The court of appeals already

possesses appellate jurisdiction over an issue for which a district court normally

possesses original jurisdiction.  If the issue pertaining to the Safety Act were to be

heard in the district court, the appellate court nonetheless would review the district

court's decision on direct appeal.  Similar to *Ruud*, the D.C. Circuit's review of

FHWA's decision with a fully developed administrative record largely would

duplicate the district court's review of the same decision from the same

administrative record.  *Id.*  The interests of assuring a forum capable of treating the

case as a coherent whole in one sitting "*might justify* the comparatively modest

displacement of the district court."  *Id.* (emphasis added).

These decisions all recognize that the issue as to whether the exercise of

jurisdiction over a petition for review of a decision for which the law vests original

jurisdiction, in part, in the court of appeals, and, in part, in the district court, proves

persuasive, but not mandatory.  *Rudd*, 347 F.3d at 1089.  For example, the Ninth

Circuit in *Ruud* concluded that "an appellate court *may nonetheless* review the

issue if it is 'inextricably intertwined' with or 'necessary to ensure meaningful review.'" *Id.* (emphasis added).  Similarly, the D.C. Circuit in *Int'l Bhd. of Teamsters*, 17 F.3d at 1478, concluded that direct appellate review "*might justify* the comparatively modest displacement of the district court."  (emphasis added).

This comparatively modest displacement of the district court typically involves a case where the agency action comes for review with a fully developed administrative record.  *Id.*; *Suburban O'Hare Comm'n v. Dole*, 787 F.2d 186, 192 (7th Cir. 1986).  The D.C. Circuit in *Shell Oil Co. v. FERC*, 47 F.3d 1186 (D.C. Cir. 1995), agreed.  There the D.C. Circuit addressed an appeal that combined a direct appeal of an order of the Federal Energy Regulatory Commission ("FERC") and a transfer by a district court of a related challenge to the same FERC order.  *Id.* at 1189-90.  The D.C. Circuit recognized its exclusive jurisdiction to review that portion of the FERC order that related to the challenge under the Interstate Commerce Act.  *Id.*

The D.C. Circuit hesitated to consider the issue raised in the transfer from the district court when the district court clearly possessed original jurisdiction to review that portion of the FERC order that related to the Outer Continental Shelf Land Act, 43 U.S.C. § 1334(f).  Review first by the district court afforded no advantage, however, "over a court of appeals with respect to on-the-record review of completed administrative proceedings."  *Shell Oil, Co.*, 47 F.3d at 1195.  The

20

D.C. Circuit recognized the waste of judicial resources that would accrue by sending the case back to the district court after the parties had fully briefed the underlying issue. *Id.* These considerations led the court to determine that in a situation where an agency order could be reviewed on two statutory bases "that give rise to separate paths for judicial review, the entire order *should be* reviewed in a comprehensive coherent fashion" in the courts of appeals. *Id.* (emphasis added). This approach avoids confusion and the potential for duplication. *Id.*

Three overriding principles animate these decisions. First, the agency orders at issue arose from common factual backgrounds. Second, the agency order had to address a common question of law. And finally, the agency order had to rely on dual statutory bases that gave rise to two paths to review. These courts of appeal opted to exercise discretionary jurisdiction and displace the district court's role in reviewing an agency decision only where they possessed a fully developed administrative record. *Ruud*, 347 F.3d at 1090; *Shell Oil Co.*, 47 F.3d at 1195; *Sutton*, 38 F.3d at 625-26; *Int'l Bhd. of Teamsters*, 17 F.3d at 1478. This approach would not apply here because dual statutory bases do not give rise to two paths to review. This case presents a situation where dual authority does not exist because only one path to review proves available. This Court possesses the ability to develop an administrative record and review Wildearth's failure to act claim. Wildearth's only available authority for review rests in this Court.

21

### 3. Wildearth's failure to comply with the MLA claim comes to the Court without any kind of administrative record.

The absence of a fully developed administrative record merits further analysis. Among other matters, "an administrative record and factual findings" usually demonstrate finality. *Gilmore v. Gonzales*, 435 F.3d 1125, 1133 (9th Cir. 2006). Petitioners in *Public Citizen, Inc. v. NHTSA*, 489 F.3d 1279, 1287 (D.C. Cir. 2007), sought "an order prescribing a motor vehicle safety standard" under the Safety Act. The Safety Act provides that such orders, when issued, must be reviewed in the first instance by the court of appeals. 49 U.S.C. § 30161(a). The D.C. Circuit recognized, however, that 49 U.S.C. § 30162(a)(1) governs denials of requests to initiate proceedings or consider orders or rules. *Public Citizen*, 489 F.3d at 1287. Section 30162(a)(1) provides for no appellate review. *Id.* NHTSA had denied the petition at an early stage. As a result, the agency's denial of the petition for rulemaking "must begin in district courts – not in courts of appeal." *Id.* The agency's refusal to act left the D.C. Circuit with no record to review.

Without such a record, "any circuit court would find it difficult or impossible to determine whether the administrative agency had acted illegally." *Cal. Energy Comm'n v. Dept. of Energy*, 585 F.3d 1143, 1150 (9th Cir. 2009). A district court, "with its fact-finding capability," would provide a more appropriate venue. *Id.* The Ninth Circuit would possess no administrative record to review here.

Wildearth filed its complaint directly in this Court.  No proceedings occurred

before any federal agency to review.

This absence of any administrative proceedings differs from the

circumstances faced by the Ninth Circuit in *Yeutter*, 887 F.2 908.  There the

plaintiffs had failed to intervene timely in a FERC proceeding.  Plaintiffs instead

brought an action in district court to challenge certain conditions that the Forest

Service had provided to FERC for inclusion in a proposed license to build a

hydroelectric facility.  *Id.* at 909-10.  The Federal Power Act ("FPA") required

FERC to solicit and accept such conditions from the Forest Service.  *Id.* at 912.

The FPA provided also for "exclusive jurisdiction for the Court of Appeals to

review and make substantive modifications to FERC licensing orders."  *Id.* at 911.

Plaintiffs sought to avoid this exclusive review provision by pleading

carefully that they had filed the action against the Forest Service pursuant to NEPA

and related statutes, and not as an attack on FERC's licensing decision.  *Id.*  The

Ninth Circuit rejected this characterization: "it is clear that the suit is an attempt to

restrain the licensing procedures authorized by FERC."  *Id.* at 912.  The Ninth

Circuit emphasized also the practical consequences of allowing plaintiffs to

circumvent appellate jurisdiction.  The Ninth Circuit noted that "[a]fter the license

applicant had initially fought his way through the administrative proceedings, he

would then have to grind through the district court and, almost certainly, through

23

the appeal as of right to the circuit court." *Id.* No party has had to grind through administrative proceedings in this case as none have occurred.

Wildearth challenges the alleged failure of PHMSA to fulfill its delegated duty pursuant to the MLA – to cause the annual inspection of all oil and gas pipelines. The resolution of this issue presumably would require the Court, "with its fact-finding capability," to develop a record of PHMSA's inspection activities. *California Energy Comm'n*, 585 F.3d at 1150. The Court would be required to determine whether Federal Defendants have complied with their statutory duty to cause the inspection of all pipelines that cross federal lands. 30 U.S.C. § 185(w)(3).

The other alternative would force Wildearth to ask PHMSA to adopt regulations that would cause the annual inspection of all pipelines that cross federal lands on the basis that present regulations have failed to fulfill this duty. Wildearth could seek judicial review in the court of appeals if PHMSA denied this request. The First Circuit suggested such an approach in *In re Fall River, Massachusetts*, 470 F.3d 30, 33 (1st Cir. 2006). This approach would run the risk of being barred by the eighty-nine-day limit contained in 49 U.S.C. § 60119(a)(1). The Court determines that "the interests of assuring a forum capable of treating the case coherently" and possibly providing a remedy for Wildearth supports review in this Court. *Int'l Bhd. of Teamsters,* 17 F.3d at 1482. This consolidated review of

24

Wildearth's petition avoids potential inconsistency and conflicts between the district and appellate courts while ensuring the timely and efficient resolution of this case.

### III.   CONCLUSION

Wildearth has alleged injury sufficient to establish standing to survive a motion to dismiss.  *Martin*, 902 F.3d at 1040.  Wildearth properly has asserted an alleged failure to act claim pursuant to § 706(1) of the APA.  *SUWA*, 542 U.S. at 64.  An order from this Court, in the fashion of a writ of mandamus that directed Federal Defendants comply with its duty under the MLA could redress Wildearth's alleged injury.  *SUWA*, 542 U.S. at 64 (*quoting* Attorney General's Manual on the Administrative Procedures Act 108 (1947)).  Finally, the lack of a fully developed administrative record, or any activity before PHMSA, persuades this Court that it should exercise jurisdiction over the narrow issue raised in Wildearth's complaint whether PHMSA has failed to comply with its duty under the MLA.  30 U.S.C. §185(w)(3).

//

//

//

//

//

## <u>ORDER</u>

Accordingly, IT IS ORDERED that Federal Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Doc. 18) is DENIED.

DATED this 23rd day of May, 2019.

Brian Morris
United States District Court Judge