Sarah McMillan
Mont. Bar No. 3634
WildEarth Guardians
P.O. Box 7516
Missoula, MT 59807
(406) 549-3895
smcmillan@wildearthguardians.org

Rebecca Fischer, *pro hac vice*
Colo. Bar No. 51604
WildEarth Guardians
2590 Walnut Street
Denver, CO 80205
(406) 698-1489
rfischer@wildearthguardians.org

Samantha Ruscavage-Barz, *pro hac vice*
N.M. Bar No. 23276
WildEarth Guardians
301 N. Guadalupe Street, Suite 201
Santa Fe, NM 87501
(505) 401-4180
sruscavagebarz@wildearthguardians.org

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| **WILDEARTH GUARDIANS**, <br><br> Plaintiff, <br><br> v. <br><br> **ELAINE L. CHAO**, et al., <br><br> Federal Defendants. | Case No. CV-18-110-GF-BMM <br><br> **PLAINTIFF'S COMBINED RESPONSE-REPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 2

    I.     PHMSA Has Failed to Act to Cause the Annual Examination of All Pipelines On Federal Lands. ............................................................. 2

      A.    The Existence of PHMSA's PSA Regulations Does Not Demonstrate that PHMSA Has Acted as Required by the MLA. ................................. 2

      B.    Because Discrete, Legally-Required Action Remains, Guardians' 706(1) Claim is Proper. .......................................................... 7

    II.    Guardians' Injuries are Caused by PHMSA's Failure to Cause Annual Inspection of Pipelines on Federal Lands. ................................ 12

    III.    This Court Correctly Determined That This is a Failure to Act Case, and That It Has Jurisdiction. ............................................................ 16

    IV.    Remanding the PSA Regulations to PHMSA is Not the Proper Remedy for a Failure-to-Act Case Because the Regulations Are Not at Issue. ............ 19

CONCLUSION ........................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*Audubon Society of Portland v. Jewell*,
   104 F. Supp. 3d 1099 (D. Or. 2015) .................................................................20
*Bennett v. Spear*,
   520 U.S. 154 (1997).......................................................................12, 13, 14, 15
*Biodiversity Legal Found. v. Badgley*,
   309 F.3d 1166 (9th Cir. 2002) ..........................................................................21
*Ecology Center v. U.S. Forest Service*,
   192 F.3d 922 (9th Cir. 1999) ...............................................................................8
*Envtl. Def. Fund, Inc. v. Costle*,
   657 F.2d 275 (D.C. Cir. 1981) .....................................................................3, 11
*Friends of the Earth v. Laidlaw*,
   528 U.S. 167 (2000).............................................................................................12
*Hells Canyon Preservation Council v. U.S. Forest Service*,
   593 F.3d 923 (9th Cir. 2010) ...............................................................................8
*Hyatt v. U.S. Patent & Trademark Office*,
   146 F. Supp. 3d 771 (E.D. Va. 2015) ...............................................................11
*Int'l Bd. of Teamsters v. Pena*,
   17 F.3d 1478 (D.C. Cir. 1994) ..........................................................................18
*K.M. ex rel. Bright v. Tustin Unified School Dist.*,
   725 F.3d 1088 (9th Cir. 2013) .............................................................................9
*Kenai Peninsula Borough v. State of Alaska*,
   612 F.2d 1210 (9th Cir. 1980) .............................................................................6
*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)............................................................................................14
*Nat. Resources Def. Council v. Southwest Marine, Inc.*,
   236 F.3d 985 (9th Cir. 2000) ............................................................................21
*Nat'l Parks Conservation Ass'n v. Manson*,
   414 F.3d 1 (D.C. Cir. 2005) ..............................................................................13
*Nat'l Wildlife Fed'n v. Espy*,
   45 F.3d 1337 (9th Cir. 1995) ............................................................................18
*National Resources Defense Council v. U.S. E.P.A.*,
   437 F.Supp.2d 1137 (C.D. Cal. 2006) ................................................................4

*Nevada v. Watkins*,
939 F.2d 710 (9th Cir. 1991) ..........................................................7, 8

*Norton v. Southern Utah Wilderness Alliance*,
542 U.S. 55 (2004).............................................................1, 5, 11, 20

*Pritkin v. U.S. Department of Energy*,
254 F.3d 791 (9th Cir. 2001) .......................................................15, 16

*Ruud v. U.S. Dept. of Labor*,
347 F.3d 1086 (9th Cir. 2003) ...........................................................18

*San Luis & Delta-Mendota Water Auth. v. Salazar*,
638 F.3d 1163 (9th Cir. 2011) ....................................................14, 15

*Security Exchange Commission v. Chenery*,
332 U.S. 194 (1947)............................................................................5

*Sierra Club v. U.S. Envtl. Prot. Agency*,
167 F.3d 658 (D.C. Cir. 1999) ..........................................................20

*Simon v. East Kentucky Welfare Rights Organization*,
426 U.S. 26 (1976)............................................................................15

*Sutton v. U.S. Dept. of Transp.*,
38 F.3d 621 (2d Cir. 1994)................................................................18

*Trinidad y Garcia v. Thomas*,
683 F.3d 952 (9th Cir. 2012) .....................................................3, 4, 11

*United States v. Powers*,
307 U.S. 214 (1939)............................................................................6

*Vietnam Veterans of America v. Central Intelligence Agency*,
811 F.3d 1068 (9th Cir. 2016) .......................................................9, 10

*Yang v. Immigration & Naturalization Service*,
79 F.3d 932 (9th Cir. 1996) ................................................................5

## STATUTES

30 U.S.C. § 185(w)(3) .................................1, 2, 3, 5, 6, 7, 8, 16, 21, 22

5 U.S.C § 706(1)..................................................................................1

5 U.S.C. § 706(2)..............................................................................7, 9

## OTHER AUTHORITIES

Black's Law Dictionary (11th ed. 2019) ..................................................2

**INTRODUCTION**

Under the standard set by the Supreme Court in *Norton v. Southern Utah Wilderness Alliance*, a failure to act claim under Section 706(1) of the Administrative Procedure Act ("APA") "can proceed only where a plaintiff asserts that an agency [1] failed to take [2] a discrete agency action [3] that it is required to take." 542 U.S. 55, 64 (2004) (emphasis omitted) (citing 5 U.S.C § 706(1)). Unlike most failure to act cases, Federal Defendants (collectively "PHMSA") do not deny that Section 185(w)(3) of the Mineral Leasing Act ("MLA") gives rise to a discrete agency action it is required to take—namely the annual inspection of all pipelines on federal lands. *See* Defs.' Mem. in Opp'n, Doc. 44 at 1 (citing 30 U.S.C. § 185(w)(3)). Instead, PHMSA solely disputes that it has failed to act to meet this duty. *Id.* at 7. PHMSA contends that its promulgation of pipeline safety regulations under a different act—the Pipeline Safety Act ("PSA")—automatically satisfies its duty under the MLA without additional evidence. *Id.* at 8. But, this superficial argument fails to resolve the fundamental issue of this case—whether the specific duty outlined under the MLA is actually occurring or whether PHMSA is failing to act. Without evidence (e.g. inspection reports) to support its conclusion that its existing PSA regulations in fact cause the discrete, legally-required inspections under MLA Section 185(w)(3), PHMSA cannot meet its burden under summary judgment. Thus, we request that this Court grant Guardians' motion for summary

1

judgment, deny PHMSA's cross-motion for summary judgment, declare that PHMSA is violating Section 185(w)(3) of the MLA, and compel agency action unlawfully withheld.

## ARGUMENT

**I.   PHMSA Has Failed to Act to Cause the Annual Examination of All Pipelines On Federal Lands.**

**A.   The Existence of PHMSA's PSA Regulations Does Not Demonstrate that PHMSA Has Acted as Required by the MLA.**

PHMSA's main argument—that it implements Section 185(w)(3) of the MLA through its PSA regulations—relies on the faulty premise that the mere existence of its PSA regulations is enough to meet the specific action required under the MLA. This argument must fail for one simple reason: no evidence supports PHMSA's claim that inspections[1] are actually occurring. PHMSA must actually prove, either through inspection reports or other evidence, that it has taken the specific action required by the MLA. No such evidence exists in the record for this case.

The Ninth Circuit has held that a simple recitation of the requirements of regulations is not sufficient to demonstrate actual agency action. *Trinidad y Garcia*

[1] PHMSA claims that Guardians' use of the terms "examination" and "inspection" interchangeably is confusing. Doc. 44 at 22 n.8. Not so. Black's Law Dictionary demonstrates that the words are synonymous. Black's Law Dictionary (11th ed. 2019) (defining "inspection" as "a careful *examination* of something, such as goods (to determine their fitness for purchase)") (emphasis added).

2

*v. Thomas*, 683 F.3d 952, 957 (9th Cir. 2012); *see also Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 298 (D.C. Cir. 1981) (requiring "sufficient record evidence to indicate that [the specific action] has been undertaken by the three defendants"). In *Trinidad y Garcia*, the Secretary of State was required by regulation to make a determination regarding whether a person subject to extradition would be tortured. 683 F.3d at 956. The court ultimately concluded that "the record before us provides no evidence that the Secretary has complied with the procedure in Trinidad y Garcia's case." *Id.* at 957. Rather, "[t]he State Department has submitted a generic declaration outlining the basics of how extradition operates at the Department and acknowledging the Department's obligations under the aforementioned treaty, statute and regulations, *but the Department gives no indication that it has actually complied with those obligations in this case*." *Id.* (emphasis added).

Thus, evidence of actual compliance, rather than a recitation of regulatory language, is needed in order for PHMSA to show that it has acted under MLA Section 185(w)(3). Here, PHMSA has not provided any documentation relating to the performance of annual pipeline inspections on federal land in the administrative record for this case, and none of the records post-date 2008, *see*

3

AR002693 & AR001590. Thus, there is no evidence that PHMSA is causing examinations of *all* pipelines *at least once per year*.[2]

PHMSA also points to various Congressional reports[3] and new rules revising the PSA regulations to support its contention that it already implements the "cause the examination" provision of the MLA. Doc. 44 at 8, Exs. 1–6. But the Congressional reports merely reflect DOT's opinion that it was achieving compliance with the MLA through its PSA regulations, and the cited rules merely incorporate general statements into the regulatory preamble echoing this opinion. Ultimately, these documents fail to constitute the evidence necessary to prove that examinations are actually occurring. *Trinidad y Garcia*, 683 F.3d at 957.

[2] Although PHMSA also cites to Alan Mayberry's declaration as proof of its compliance with the MLA, Doc. 44 at 9 (citing Doc. 39), this argument does not withstand scrutiny. The declaration merely provided that "PHMSA causes pipeline examinations through its comprehensive pipeline safety regulations which require operators to examine their pipelines." Doc. 39, ¶ 5. Missing is whether PHMSA causes the *annual* inspections of *all* pipelines on federal lands. *See National Resources Defense Council v. U.S. E.P.A.*, 437 F.Supp.2d 1137, 1160 (C.D. Cal. 2006) (holding that EPA could not pick and choose to which sources its mandatory duty applied).

[3] As Guardians explained in its Motion for Summary Judgment, Congress purposefully assigned the duty "to cause the examination of all pipelines . . . on federal lands" to the Department of Transportation when it passed the MLA as a check on "the oil-industry-dominated Interior Department." Doc. 40-1 at 21. Congress declined to remove Section 185(w)(3) during subsequent amendments of the MLA. *Id.* at 15; *see also* Doc. 30 at 2 (accord).

PHMSA also argues that it may choose between ad hoc adjudication or rulemaking in order to comply with statutory provisions, citing *Yang v. Immigration & Naturalization Service*, 79 F.3d 932 (9th Cir. 1996) and *Security Exchange Commission v. Chenery*, 332 U.S. 194 (1947), for support. These cases are inapplicable here. Both involved whether an agency regulation, as applied to a regulated entity, was valid. *See, e.g.*, *Yang*, 79 F.3d at 935 (deciding the validity of a rule categorically barring a particular class of asylum applicants); *Chenery*, 332 U.S. at 197 (deciding whether an agency had authority to promulgate an ad hoc rule related to a holding company's specific actions). Here, the issue is whether PHMSA has failed to act, not whether an existing PHMSA regulation is valid.

Overall, PHMSA's arguments evince a fundamental misunderstanding of the agency action needed to satisfy Section 185(w)(3). *See* Doc. 44 at 19 (arguing that "PHMSA has acted to issue regulations"). Any action vaguely related to the duty at issue does not automatically satisfy the statutory mandate; instead the action must necessarily be informed by the specific nondiscretionary duty at issue as well as the statute's purpose. *See Norton v. S. Utah Wilderness All.*, 542 U.S. at 65 (recognizing that an order compelling prompt issuance of regulations would be proper where the statute required an agency "to establish regulations to implement" a statutory requirement by a date certain) (quoting 47 U.S.C. § 251(d)(1)). Here, PHMSA argues generally that because it has done something, a Section 706(1)

cause of action does not exist. Doc. 44 at 19. However, PHMSA's ultimate action must actually satisfy its nondiscretionary duty to "cause the examination of all pipelines and associated facilities on federal lands." 30 U.S.C. § 185(w)(3). To read otherwise would render the provision under the MLA wholly ineffective, an outcome which the Supreme Court strongly counsels against. *United States v. Powers*, 307 U.S. 214, 217 (1939); *Kenai Peninsula Borough v. State of Alaska*, 612 F.2d 1210, 1214 (9th Cir. 1980), *aff'd sub nom. Watt v. Alaska*, 451 U.S. 259 (1981). Put another way, although PHMSA has discretion in the way it meets its mandatory duty, its action cannot be so far removed from the original statutory mandate as to nullify that mandate. Ultimately, PHMSA might prevail in this argument if the agency had provided evidence of inspections and Guardians had challenged the adequacy of those inspections. But here, PHMSA asks the Court to determine it has taken the required action simply by enacting regulations that require inspections of *some* pipelines. PHMSA's nondiscretionary duty under Section 185(w)(3) is not to promulgate regulations; rather it is to "cause the examination of all pipelines and associated facilities on federal lands." Because PHMSA has provided no evidence demonstrating that actual inspections are occurring, PHMSA cannot claim that it has taken action to meet its duty under the MLA.

**B.      Because Discrete, Legally-Required Action Remains, Guardians' 706(1) Claim is Proper.**

With PHMSA's argument that the existence of its PSA regulations equates to compliance with Section 185(w)(3) of the MLA invalid, PHMSA's dependent argument—that Guardians is actually challenging an agency action under APA § 706(2)—must also fail. A discrete, legally-required action under the MLA still remains to be fulfilled.

PHMSA cites to three Ninth Circuit cases to support its argument that Guardians is challenging the sufficiency of its existing pipeline regulations, and not bringing a true failure to act claim. Doc. 40-1 at 16–17. All of these cases are distinct from the issue here. None involved whether an agency action under one statute would satisfy a nondiscretionary duty under a different statute. Indeed, in *Nevada v. Watkins*, the main issue of the case was not even a failure to act, but rather whether the Secretary of the Department of Energy's action under the Nuclear Waste Policy Act ("NWPA") to "issue general guidelines for the recommendation of site for repositories [of nuclear waste]" was final and therefore subject to judicial review. 939 F.2d 710, 712 (9th Cir. 1991) (citing 42 U.S.C. § 10141(b)(1)(A)). The court solely addressed a potential failure to act claim in dicta in a footnote, noting that review under the NWPA was not available because the Secretary had acted to issue the guidelines. *Id.* at 714, n.11. Here, if the MLA only required PHMSA to issue regulations, like the duty in *Watkins* to issue guidelines,

7

its duty would perhaps be complete. But, this is not the action at issue here. *See* 30 U.S.C. § 185(w)(3). Thus, *Watkins* is uninstructive.

Similar reasoning applies to the decision in *Ecology Center v. U.S. Forest Service*, 192 F.3d 922 (9th Cir. 1999). In *Ecology Center*, the forest plan required the Forest Service to "produce annual, biannual and five-year reports containing monitoring data" to evaluate the efficacy of the forest plan. *Id.* at 924. Plaintiffs claimed that the Forest Service had "continuously failed to meet its monitoring duty required under [a forest] Plan," because the Service had failed to produce monitoring reports in two years out of the 10 year life of the plan. *Id.* at 926. The court ultimately found that "the record demonstrates that the Forest Service performed extensive monitoring and provided detailed reports recounting its observations" and that it "merely failed to conduct its duty in strict conformance with the Plan and NFMA Regulations." *Id.* Unlike defendants in *Ecology Center* who could point to monitoring reports for all but two of the 10-year monitoring time frame, here, PHMSA cannot point to *any* evidence that it has actually caused the examination of all pipelines and associated facilities on federal lands at any time in the past. No inspection reports exist in the record; therefore the nondiscretionary agency action at issue in the MLA remains unfulfilled.

Finally, PHMSA again relies on *Hells Canyon Preservation Council v. U.S. Forest Service*, 593 F.3d 923 (9th Cir. 2010) to claim that Guardians is actually

8

presenting a Section 706(2) claim. Doc. 44 at 17–18. But, as this Court recognized in its Order on PHMSA's Motion to Dismiss, Guardians' failure-to-act claim is not analogous to the facts in *Hells Canyon* because there the Forest Service had actually acted and closed trails within wilderness area boundaries. Doc. 30 at 12 (citing *Hells Canyon*, 593 F.3d at 932–33). In contrast, here, there is no evidence that PHMSA has actually caused the annual examination of all pipelines on federal lands. And, as Guardians explained in its Motion for Summary Judgment, Doc. 40-1 at 19, the fact that PHMSA has acted to promulgate regulations under the PSA does not automatically mean that PHMSA has acted to comply with a mandatory duty under a different statute. *K.M. ex rel. Bright v. Tustin Unified School Dist.*, 725 F.3d 1088, 1092, 1099–1101 (9th Cir. 2013) (holding that compliance with one statute did not result in per se compliance with a different statute where the statutes had "material differences"). Although the Ninth Circuit's decision in *K.M. ex rel. Bright* did not include a failure to act claim, *Bright* is factually more similar to the case at hand than all of the failure to act cases cited by PHMSA because *Bright* involved whether compliance under one statute resulted in automatic compliance under a similar statute—an issue which the courts have yet to decide in the failure to act realm.

   In addition, the decision in *Vietnam Veterans of America v. Central Intelligence Agency*, 811 F.3d 1068 (9th Cir. 2016) remains pertinent despite

PHMSA's mischaracterization of the case. *Vietnam Veterans* involved two failure to act claims under 706(1): failure to provide former chemical test subjects with new information regarding impacts to their health and failure to provide ongoing medical care. *Id.* at 1071. The district court held that both duties were nondiscretionary under 706(1), but found that relief was not available for the second duty because Veterans Affairs was already providing medical care. *Id.* The Ninth Circuit affirmed with regard to the mandatory duties but reversed on the issue of relief, holding that the Army was obligated to provide medical care. *Id.* Specifically, the Army had argued that its duty to provide medical care was limited to the time period during the actual experiments but not thereafter. *Id.* at 1080. In deciding against this interpretation, the court turned to the plain text of the regulation, explaining that there was no temporal restriction evident and that the term "all" in the phrase "volunteers are authorized all necessary medical care" meant all. *Id.* at 1081. Here, the plain text of the MLA compels the same outcome: PHMSA must demonstrate that it is causing the examination of *all* pipelines on federal lands. Based on the evidence before the court, the agency has not complied with this requirement.

PHMSA also claims that Guardians attempts to read a nonexistent record-keeping requirement into the statute. Doc. 44 at 21. This is not the case. Guardians' claim is based on the lack of any evidence that the requisite inspections are

actually occurring as required by the MLA, not on the agency's failure to keep inspection records. Without evidence of annual inspections, from inspection records or other documentation, Guardians and the public (and likely PHMSA) are left in the dark as to whether the agency is complying with its mandatory duty. This evidentiary void of performance of a nondiscretionary duty supports summary judgment in Guardians' favor. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012); *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 297 (D.C. Cir. 1981); *see also Hyatt v. U.S. Patent & Trademark Office*, 146 F. Supp. 3d 771, 782 (E.D. Va. 2015) (explaining that the U.S. Patent Office's duty to "cause an examination" of submitted patents was demonstrated by evidence in the record).

Finally, PHMSA broadly avers that Guardians' reading of Section 706(1) would allow anyone to challenge lawful agency action when the agency acted in a manner not believed to fully comply with the law. Doc. 44 at 22. This is a gross mischaracterization. As Guardians has admitted, the strict requirements set forth in *Norton v. Southern Utah Wilderness Alliance* apply here. Doc. 40-1 at 9. Without an agency's failure to act to cause a discrete, legally-required action, an APA 706(1) claim would not be valid. But, here, all of these requirements are met. PHMSA has conceded that a discrete, legally-required duty exists, Doc. 44 at 1,

and PHMSA has failed to demonstrate that it has acted. Thus, Guardians has met

its burden.[4]

## II. Guardians' Injuries are Caused by PHMSA's Failure to Cause Annual Inspection of Pipelines on Federal Lands.

Guardians has established standing through the declarations of its members

submitted with Guardians' Motion for Summary Judgment. *See* Docs. 40-1, 40-3,

40-4, 40-5. PHMSA challenges Guardians' standing on the ground that Guardians

has not demonstrated that PHMSA, rather than pipeline operators, causes

Guardians' injuries. Doc. 44 at 31. The second prong in the standing inquiry,

causation, requires a plaintiff to show that the alleged injury is "fairly traceable to

the challenged action of the defendant." *Friends of the Earth v. Laidlaw*, 528 U.S.

167, 180 (2000). To satisfy the "fairly traceable" requirement, a defendant's action

need not be "the very last step in the chain of causation." *Bennett v. Spear*, 520

U.S. 154 (1997). This principle particularly applies where the injury is "produced

by determinative or coercive effect [of agency action] upon the action of someone

else," such as by a decision that "alters the legal regime to which the action agency

---

[4] PHMSA also argues that Guardians "implies" that this Court has resolved the issue of whether PHMSA has failed to act in its order on the motion to dismiss. Doc. 44 at 21. Guardians made no such implication. Guardians plainly stated the standard of review at the summary judgment stage in its memorandum, Doc. 40-1 at 2–5. More importantly, PHMSA has provided no evidence that it is actually causing the examination of all pipelines on federal lands, and therefore it fails to meet the required evidentiary standard required at summary judgment.

is subject." *Id.* at 169; *see also Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 6 (D.C. Cir. 2005) (accord).

PHMSA incorrectly argues that Guardians' injuries are solely traceable to the actions of third party pipeline operators rather than to PHMSA, and faults Guardians for not providing any facts regarding activities of pipeline operators. Doc. 44 at 32. But pipeline operators on federal lands cannot be the cause of Guardians' injuries where PHMSA has provided no record evidence that the agency is exerting its MLA authority over pipeline operators or that these operators are choosing not to comply. Even if pipeline operators on federal lands could be considered the direct cause of Guardians' injuries (which they cannot, because the record contains no evidence that operators are ignoring a PHMSA directive), PHMSA is the *indirect* cause of those injuries because there is no record evidence that PHMSA is compelling annual inspection of pipelines on federal lands.

PHMSA's argument that the party responsible for performing inspections—pipeline operators—is the sole cause of Guardians' injuries ignores *Bennett*'s principle that PHMSA's failure to act need not be the *last step* in the causal chain to Guardians' injuries.[5] Here, if PHMSA were to compel annual inspection of

[5] PHMSA relies on *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) for support. But *Lujan* is inapplicable here because the Court did not explicitly address causation beyond noting that when a plaintiff claims injury from a regulation that regulates someone other than the plaintiff, causation may hinge on the response of the regulated entity. *Id.* at 562. Rather, the Court addressed plaintiffs' various

pipelines on federal lands, doing so would "alter the legal regime" and have a "coercive effect" on pipeline operators to perform the inspections in the first place. *Bennett*, 520 U.S. at 169–71 (holding where an agency has a "coercive effect" on third party action that directly injures plaintiff, that coercive effect is an indirect cause of plaintiff's injury sufficient for standing); *see also San Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163, 1170 (9th Cir. 2011) (holding that plaintiffs' "injury, then—although directly caused by Bureau's compliance with the Biological Opinion—is 'fairly traceable' to the Service's ability to enforce ESA § 9 [through the Biological Opinion].")). There is no record evidence that the inspections are occurring and PHMSA admits that it has no process in place to cause inspection of all pipelines on federal lands. Thus, PHMSA is causing Guardians' injuries.

If PHMSA were to assert its authority in Section 185(w)(3) and mandate annual inspections of all pipelines on federal public lands, such a requirement would have a coercive effect on pipeline operators who, like the Bureau of Reclamation in *Bennett* and *San Luis*, could chose to "disregard" PHMSA's

theories of injury from an interpretive rule, and determined that none met the injury-in-fact test. *Id*. at 563–67. The Court also determined that the relief plaintiffs sought—ordering revision of the challenged rule—would not remedy plaintiffs' injuries because there was an "open question" as to whether the Endangered Species Act conferred authority on the Secretary of Interior to promulgate the rule. *Id*. at 568–69.

14

inspection requirement, but would do so at their own peril.[6] Because pipeline operators are regulated by PHMSA pursuant to its authority under Section 185(w)(3) of the MLA, they would not be akin to the type of independent third party actors in the cases cited by PHMSA that break the causal chain between PHMSA and Guardians' injuries.

PHMSA relies on *Simon v. East Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976), and *Pritkin v. U.S. Department of Energy*, 254 F.3d 791 (9th Cir. 2001), to support its third-party independent actor argument. Doc. 44 at 33. Neither case is relevant here because both involve plaintiffs who sued agencies that lacked statutory authority to redress plaintiffs' injuries, rather than targeting the agencies that actually caused the injuries and had the statutory duty required to redress those injuries. *See Simon*, 426 U.S. at 33, 42–43 (no causation where hospitals' denial of indigent services could not be traced to Internal Revenue Service Ruling granting tax benefits to those hospitals); *Pritkin*, 254 F.3d at 798 (no causation where one agency's lack of required medical monitoring program needed by plaintiff could not be traced to another agency responsible only for the costs of the program and lacking a statutory duty to implement the program). Here, in Section 185(w)(3) of

[6] This is the relevant causal chain for a causation analysis, rather than PHMSA's proposed causal chain wherein operators choose not to annually inspect pipelines on federal lands because no requirement exists to do so. Doc. 44 at 33. It is PHMSA's failure to act that causes inspections not to be performed, not an independent decision by operators to ignore a non-existent requirement.

the MLA, Congress imposed the statutory duty to cause annual pipeline inspections on PHMSA, not pipeline operators. Thus, PHMSA' failure to cause inspections that could reveal (and ultimately remedy) leaking pipelines is the cause of Guardians' injuries.

## III.   This Court Correctly Determined That This is a Failure to Act Case, and That It Has Jurisdiction.

PHMSA continues to erroneously characterize this case as challenging the sufficiency of the PSA regulations, and uses this mischaracterization as the basis for rehashing unsuccessful arguments from its Motion to Dismiss regarding this Court's jurisdiction. Doc. 44 at 23–30; *see also id*. at 23 ("[C]hallenges to PHMSA's pipeline safety regulations must be heard in the court of appeals."), 24 ("It is those regulations that are adversely affecting Plaintiff here . . . ."), 27 ("It would be the administrative record for the PHMSA rulemaking that was being challenged."). As consistently stated throughout its briefing, however, Guardians is challenging PHMSA's failure to act to cause annual inspections of all pipelines on federal lands as required by Section 185(w)(3) of the MLA. And PHMSA has not provided any record evidence that these inspections are occurring. The Court recognized that Guardians was bringing a failure-to-act claim, rather than a challenge to PSA regulations:

> Wild[E]arth challenges the alleged failure of PHMSA to fulfill its delegated duty pursuant to the MLA – to cause the annual inspection of all oil and gas pipelines. The resolution of this issue presumably would require the Court,

"with its fact-finding capability," to develop a record of PHMSA's inspection activities. *California Energy Comm'n*, 585 F.3d at 1150. The Court would be required to determine whether Federal Defendants have complied with their statutory duty to cause the inspection of all pipelines that cross federal lands. 30 U.S.C. § 185(w)(3).

Doc. 30 at 24. Consequently, the Court held that it "possesses original jurisdiction over a failure to act challenge to the MLA." *Id.* at 14.

PHMSA disputes this Court's jurisdiction on two grounds: (1) the Court of Appeals has exclusive jurisdiction over challenges to PHMSA's PSA regulation, and (2) the availability of judicial review in the Court of Appeals for PSA regulations renders APA review unavailable. Doc. 44 at 23–30. Although the Court rejected both of these arguments following thorough consideration of all of PHMSA's disparate arguments at the motion to dismiss stage, PHMSA takes issue with this Court's conclusions, and incorrectly characterizes the Court's decision as "conclud[ing] that the courts of appeals did not have jurisdiction because they would not have the benefit of a fully-developed administrative record." *Id.* at 26. But PHMSA reads the Court's jurisdictional decision too narrowly.

First, the Court recognized that Congress had provided, through express statutory language, exclusive jurisdiction to the courts of appeal to review challenges to the PSA regulations by persons claiming to be harmed by those regulations. Doc. 30 at 13. However, the Court also determined that because "[t]he MLA provides no similar vehicle for appellate court review," the Court has

17

"original jurisdiction over a failure to act challenge to the MLA." *Id.* at 14 (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1342 (9th Cir. 1995)).

Second, the Court also considered whether the "dual authority" cases PHMSA relied on in its Motion, as well as other dual authority cases, applied to divest the Court of jurisdiction to hear Guardians' failure-to-act case. Doc. 30 at 15–21. Distinct from the exclusive jurisdiction principle, the dual authority principle is considered where an agency action is challenged on two statutory bases that give rise to separate paths for judicial review—one in the court of appeals and one in the district court. *See*, *e.g.*, *Ruud v. U.S. Dept. of Labor*, 347 F.3d 1086, 1087 (9th Cir. 2003) (challenging agency decision reached pursuant to the Clean Air Act providing original jurisdiction in the Court of Appeals, and the Comprehensive Environmental Response, Compensation, and Liability Act, which did not); *Sutton v. U.S. Dept. of Transp.*, 38 F.3d 621, 624–25 (2d Cir. 1994) (accord); *Int'l Bd. of Teamsters v. Pena*, 17 F.3d 1478, 1481–82 (D.C. Cir. 1994) (accord). Upon review of relevant case law, the Court determined that while appellate court review was available in dual authority cases, it was "not mandatory." Doc. 30 at 19. Moreover, courts of appeals in dual authority case opted to exercise original jurisdiction "only where they possessed a full administrative record," rendering district court review duplicative. *Id.* at 20–21 (citations omitted).

18

Ultimately, however, because the Court recognized that Guardians was challenging PHMSA's failure to act pursuant to a MLA statutory requirement, the Court held that "[t]his approach would not apply here because dual statutory bases do not give rise to two paths to review." *Id.* at 21. Because "dual authority does not exist" in this case and the case lacks a fully developed administrative record, "only one path to review proves available" for Guardians' failure-to-act claim, and that "review rests in this Court."[7] *Id.* Thus, it is not merely the absence of an administrative record that led the Court to conclude that it has jurisdiction here, as PHMSA argues. Rather, it was (1) the basis for Guardians' claim—failure to act under the MLA, (2) the absence of a claim under a statute that provides for exclusive jurisdiction of the Court of Appeals, and (3) the absence of a developed record from an administrative proceeding that were dispositive. PHMSA's repeated assertions that this case is really a regulatory challenge that can only be reviewed by the Court of Appeals does not make it so.

## IV. Remanding the PSA Regulations to PHMSA is Not the Proper Remedy for a Failure-to-Act Case Because the Regulations Are Not at Issue.

Because PHMSA incorrectly claims this case challenges PSA regulations, it incorrectly argues that the appropriate remedy here would be remand of the PSA

---

[7] This holding also defeats PHMSA's argument that the availability of appellate court review renders APA review in the district court unavailable. Doc. 44 at 29–30.

regulations to the agency for further consideration. Doc. 44 at 37. But remand of agency regulations is appropriate where the *regulations* are challenged and found unlawful, not where an agency has failed to perform a nondiscretionary duty imposed by a statute or regulation. *Compare Sierra Club v. U.S. Envtl. Prot. Agency*, 167 F.3d 658 (D.C. Cir. 1999) (remanding agency rule setting incinerator standards challenged as insufficiently stringent to meet Clean Air Act requirements) with *Audubon Society of Portland v. Jewell*, 104 F. Supp. 3d 1099, 1102–04 (D. Or. 2015) (ordering agency to prepare conservation plans for national wildlife refuges as required by statute). This Court recognized that it "properly could order PHMSA to take an action to comply with its non-discretionary duty." Doc. 30 at 11–12 (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). Courts in this Circuit routinely grant injunctive relief to compel an agency to perform its duty as expeditiously as practicable. *See* Guardians' Mem. Doc. 40-1 at 21–25 (compiling cases discussing failure-to-act remedies). The Court should follow this precedent here.

PHMSA admits that it is not performing its nondiscretionary duty to cause the inspection of all pipelines on federal lands. Doc. 44 at 34. Yet the agency tries to deflect from this important fact to avoid a remedy relating to all pipelines on federal lands by asserting that it "is hesitant to believe Congress would have intended in Section 185(w)(3) to extend the agency's regulatory reach to pipelines

beyond those over which Congress has elsewhere given PHMSA authority." *Id.* at

35. PHMSA also admits that the PSA regulations do not expressly acknowledge

Section 185(w)(3)'s requirement for annual inspections of pipelines on federal

lands, despite the agency's litigation position that it caused these inspections

through the PSA regulations. *Id.* at 36. These admissions corroborate PHMSA's

failure to act, rendering an injunction necessary "to effectuate the congressional

purpose behind the statute." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166,

1177 (9th Cir. 2002).

Finally, Guardians is not asking the Court to "compel a new and different

agency action," as PHMSA alleges. Doc. 44 at 38. Guardians is properly asking the

Court to "compel agency action unlawfully withheld" pursuant to APA § 706(1).

Doc. 40-1 at 22–23. The Ninth Circuit has rejected PHMSA's "cramped" notion

that a district court's equitable discretion is limited to "declar[ing] that the

requirement exists and repeat[ing] that it must be followed." *Nat. Resources Def.*

*Council v. Southwest Marine, Inc.*, 236 F.3d 985, 1000 (9th Cir. 2000). Rather, the

Court may impose "equitable measures [] reasonably calculated to remedy an

established wrong." *Id.* (citation and quotation marks omitted). Such measures may

include keeping records of annual inspections to ensure compliance with Section

185(w)(3), particularly given that PHMSA has provided no pipeline inspection

records in the administrative record or in response to Guardians' FOIA requests,

and the agency admitted during argument on its motion to dismiss that it does not keep such records. A separate relief phase could aid the Court in determining the appropriate scope of injunctive relief.

## CONCLUSION

In sum, this case is about PHMSA's failure to perform its legally-required duty under Section 185(w)(3) to cause the inspection of all pipelines on federal lands. PHMSA has admitted throughout this proceeding that it does not comply with this duty, and has provided no record evidence that pipelines on federal lands are being inspected on an annual basis either by PHMSA or pipeline operators. Thus, the agency has failed to act within the meaning of APA § 706(1). PHMSA attempts to divert the Court's attention away from these inconvenient facts by rehashing previously-rejected arguments regarding jurisdiction and standing. But PHMSA's arguments lack merit and do not prevent the Court from reaching the merits of this case. Guardians respectfully requests that the Court grant Guardians' motion for summary judgment, declare that Defendants have violated Section 185(w)(3) of the Mineral Leasing Act, and compel Defendants' unlawfully withheld actions.

\\

\\

\\

Respectfully submitted on the 16th day of January 2020,

/s/ *Rebecca Fischer*
Rebecca Fischer, *pro hac vice*
WildEarth Guardians
2590 Walnut Street
Denver, CO 80205
(406) 698-1489
rfischer@wildearthguardians.org

/s/ *Samantha Ruscavage-Barz*
Samantha Ruscavage-Barz, *pro hac vice*
WildEarth Guardians
301 N. Guadalupe Street, Suite 201
Santa Fe, New Mexico 87501
(505) 401-4180
sruscavagebarz@wildearthguardians.org

/s/ *Sarah McMillan*
Sarah McMillan
WildEarth Guardians
P.O. Box 7516
Missoula, MT 59807
(406) 549-3895
smcmillan@wildearthguardians.org

*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I certify that this response is in compliance with L.R. 7.1 and the Court's June 13, 2019 Scheduling Order (Doc. 35). The response is 5,502 words, as counted using the word count feature in Microsoft Word and excluding the caption, table of contents, table of authorities, certificate of compliance, and certificate of service.

/s/ *Rebecca Fischer*
Rebecca Fischer, *pro hac vice*
WildEarth Guardians
2590 Walnut Street
Denver, CO 80205
(406) 698-1489
rfischer@wildearthguardians.org

## CERTIFICATE OF SERVICE

I certify that on January 16, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF filing and transmission service, which caused all ECF-registered counsel to be served by electronic means.

/s/ *Rebecca Fischer*
Rebecca Fischer
Counsel for Plaintiff