# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

|  |  |
|---|---|
| WILDEARTH GUARDIANS, | **CV-18-110-GF-BMM** |
| Plaintiff, |  |
| vs. | **ORDER** |
| ELAINE L. CHAO, et al., |  |
| Defendants, |  |

Plaintiff Wildearth Guardians challenges the alleged failure of the Department of Transportation and the Pipeline Hazardous Material Safety Administration (collectively "PHMSA" or "Federal Defendants") to comply with the directive in the Mineral Leasing Act to cause the inspection of all pipelines on federal lands at least once annually. (Doc. 1). The parties have filed cross motions for summary judgment. This Court conducted a hearing on the cross motions for summary judgment on March 4, 2020.

## BACKGROUND

As the Court provided background in its earlier Order at the motion to dismiss stage, the Court addresses background facts here only briefly. (*See* Doc. 30). The Mineral Leasing Act ("MLA") contains a provision, added by Congress in

1973, requiring "[p]eriodically, but at least once a year, the Secretary of the Department of Transportation shall cause the examination of all pipelines and associated facilities on Federal lands and shall cause the prompt reporting of any potential leaks or safety problems." 30 U.S.C. § 185(w)(3); An Act to Amend Section 28 of the Mineral Leasing Act of 1920, Pub. L. 93-153, 87 Stat. 576, 576 (1973). The Secretary of Transportation has delegated the responsibility under § 185(w)(3) to PHMSA, an operating administration under the Department of Transportation. (Doc. 40-2 at 2); 49 C.F.R. § 1.97(a)(2).

Neither party disputes that PHMSA has failed to cause the examination of all pipelines on federal lands. (Doc. 40-2 at 4). It is also undisputed that PHMSA's regulations provide for the examination of certain pipelines on federal lands. *See* 49 C.F.R. pts. 191,192, 195. Wildearth equates Federal Defendants' exclusion from inspection of certain types of pipelines with a "failure to act" pursuant to 5 U.S.C. § 706(1) of the Administrative Procedure Act ("APA"). The Court previously determined that it possessed jurisdiction to hear Wildearth's alleged failure to act claim under § 706(1). (Doc. 30 at 22-24). The Court will not revisit that question here.

## DISCUSSION

### A. STANDARD

A court should grant summary judgment where the movant demonstrates that no genuine dispute exists "as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment remains appropriate for resolving a challenge to a federal agency's actions when review will be based primarily on the administrative record. *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 778 (9th Cir. 2006). The Administrative Procedure Act governs Wildearth's claims. *See Hells Canyon Preservation Council v. U.S. Forest Serv.*, 593 F.3d 923, 929 (9th Cir. 2010).

**B. STANDING**

Wildearth's members must demonstrate three elements to establish standing: (1) that there has been an injury in fact; (2) that the injury is fairly traceable to the challenged action; and (3) that the injury likely would be redressed by a favorable decision. *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015). Defendants argue that Wildearth has failed to demonstrate standing because they fail to allege facts that demonstrate causation. Specifically, Federal Defendants argue that Wildearth has failed to provide facts to support a conclusion that the injuries of which it complains arise from PHMSA's alleged failure to cause annual inspections of pipelines, "rather than from some other operator action or decision." (Doc. 44 at 33). Wildearth contends that the injury is "fairly traceable" to Federal Defendants and that Wildearth is not required to demonstrate that

3

Federal Defendants' action represents "the very last step in the chain of causation." (Doc. 47 at 12 quoting *Bennett v. Spear*, 520 U.S. 154 (1997)).

The Court agrees with Wildearth. Wildearth's members have submitted affidavits demonstrating that they live, work, and recreate on and near federal public lands traversed by surface and subsurface oil and gas pipelines. (*See* Doc. 40-3, Eisenfeld Decl.; 40-4, Nichols Decl.; 40-5, Molvar Decl.). The fact that pipeline operators' actions or decisions may constitute a step in the causation chain does not mean the injury is not "fairly traceable" to PHMSA. Although an injury resulting from independent action of a third party not before the Court may preclude standing, here, the alleged injury is "produced by determinative or coercive effect upon the action of someone else." *Bennett*, 520 U.S. at 169. Federal Defendants have provided no evidence to demonstrate that pipeline operators either are complying, or are failing to comply, with regulations. Federal Defendants' argument that the action of pipeline operators precludes the alleged injury from being "fairly traceable" to PHMSA proves unavailing.

## C. WHETHER THE AGENCY HAS ACTED

### 1. *Statutory and Regulatory Background*

Congress enacted the Pipeline Safety Act ("PSA") and the MLA for different purposes. These statutes impose different statutory duties on different

federal agencies. Congress enacted the PSA in 1979. Pub. L. 96-129, 93 Stat. 989 (1979). The PSA gives the Secretary of Transportation regulatory and enforcement authority to take actions on pipelines. 49 U.S.C. § 60102. The PSA ensures "adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities." *Id.* at § 60102(a)(1).

The PSA applies to all pipelines across the nation, including those that cross private, state, and federal land. *Id.* Congress excluded certain pipelines from regulation under the PSA. *See* 49 U.S.C. § 60101(a)(21)(B), (a)(22)(B). These exclusions from regulation encompass flow lines and most rural gathering lines. *Id.* PHMSA implements safety regulations for natural gas and hazardous liquid pipelines through regulations contained in Parts 191, 192, and 195 of the Code of Federal Regulations. *See* 49 C.F.R. pts. 191,192, 195.

The MLA authorizes and governs leasing of public lands for development of a variety of natural resources. 30 U.S.C. § 181, *et seq*. Some provisions of the MLA specifically address pipelines that cross public lands. *Id.* at § 185. These provisions contain no qualifying language or exceptions for any types of pipelines or gathering lines. Section 185(w)(3) instead directs that "[p]eriodically, but at least once a year, the Secretary of the Department of Transportation shall cause the examination of all pipelines and associated facilities on Federal lands and shall

cause the prompt reporting of any potential leaks or safety problems." *Id.* at §
185(w)(3).

PHMSA's regulations provide for the inspections of certain pipelines. For
example, the regulations require "leakage surveys" on all gas transmission lines at
least once a year. 49 C.F.R. § 192.706. Regulations also require surface conditions
inspections for all gas transmission lines at least once a year, but for some lines at
least four times a year. *Id.* § 192.705. Operators of pipelines that transport
hazardous liquids, except for rural gathering lines, "shall, at intervals not
exceeding 3 weeks, but at least 26 times each calendar year, inspect the surface
conditions on or adjacent to each pipeline right-of-way." *Id.* § 195.412(a). These
regulations indisputably cause inspections of certain pipelines. PHMSA considered
extending the requirements to all gathering lines. PHMSA ultimately rejected that
requirement, however, choosing instead to extend inspection requirements to all
but rural gathering lines. (Doc. 39-2, AR 1599-600 (gas); AR 2700 (hazardous
liquid)).

In rules published October 1, 2019, PHMSA revised the "Authority" section
of its regulations to include a citation to the specific section—§ 185(w)(3)—of the
MLA. As explanation, the agency stated "PHMSA has traditionally complied with
§ 185(w)(3) through the issuance of its pipeline safety regulations, which require
annual examinations and prompt reporting for all or most of the pipelines they

cover." Pipeline Safety: Safety of Hazardous Liquid Pipelines, 84 Fed. Reg. 52,260, 52,289–90 (Oct. 1, 2019). Further, the rule provides that "PHMSA is making this change to be consistent with and make clear its long-standing position that the agency complies with the MLA through the issuance of pipeline safety regulations." *Id.*

PHMSA also points to testimony to Congress given by the Secretary of Transportation in 1979 to support its claim that it has implemented regulations to carry out congressional intent regarding pipeline inspections. The Secretary explained that § 185(w)(3) "is already carried out or provided for under the mandates of other Federal law and regulation." 125 Cong. Rec. 2405 (1979); (Doc. 44-1). The Secretary cited to the pipeline safety regulations contained in 49 C.F.R. Parts 191, 192, and 195. *Id.* PHMSA has repeated this position to Congress in the years since. Annual Report on Pipeline Safety, 34 (U.S. Dep't of Transp. 1990) (Doc. 44-4); Annual Report on Pipeline Safety, 43 (U.S. Dep't of Transp. 1989) (Doc. 44-5); *see also* Transportation of Natural and Other Gas by Pipeline: Annual Reports and Incident Reports, 49 Fed. Reg. 18,956, 18,959 (May 3, 1984) (federal land designations added to forms "to facilitate processing this information for reporting to Congress in accordance with the Mineral Leasing Act")

PHMSA implies that Congress has acquiesced to this regulatory scheme through its failure to take any further action regarding inspection requirements

contained in the MLA. It should be noted, however, that Congress specifically declined to relieve the Department of Transportation from the duty to cause the annual inspection of all pipelines that cross federal land. *See* S. Rep. No. 96-182, at 16 (1979). The legislative history notes confirm that "'the committee struck out th[e] provision' which had removed what is now 185(w)(3)." (Doc. 23 at 3 (quoting S. Rep. No. 96-182, at 16)).

2.   *"Failure to Act" Challenges under 5 U.S.C. § 706(1)*

Wildearth fashions its claim as a "failure to act" challenge under 5 U.S.C. § 706(1), empowering this Court to "compel agency action unlawfully withheld." (Doc. 40 at 4-5). Federal Defendants insist that PHMSA's enactment of various regulations regarding pipeline inspections satisfies its duty under the MLA. (Doc. 45 at 1-2). Federal Defendants suggest that Wildearth actually challenges the adequacy of its pipeline regulations, and, therefore, Wildearth's challenge may proceed only as a challenge to final agency action as being "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under 5 U.S.C. § 706(2). (*Id.*). Federal Defendants further argue that to construe Wildearth's challenge as falling under § 706(2) would divest this Court of jurisdiction because Congress explicitly vested the circuit courts with jurisdiction over challenges to regulations enacted pursuant to the PSA. *See* 49 U.S.C. § 60119(a)(1).

8

The Court must address the threshold question of whether to review this challenge as a failure to act under § 706(1). The Court preliminarily addressed this issue at the motion to dismiss phase. (Doc. 30 at 7-11). Certain factual developments and the appropriate governing standard have changed since that time. These new circumstances lead the Court to conclude that it should reexamine these issues in resolving the cross-motions for summary judgment.

The APA provides a right to judicial review for a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute[.]" 5 U.S.C. § 702. Section 706(1) supports a cause of action to compel agency action when the agency has failed to take a discrete action that a statute or regulation requires it to take. *Id.* § 706(1). On the other hand, § 706(2) provides courts with the ability to "hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Id.* § 706(2)(A).

The United States Supreme Court's decision in *Norton v. Southern Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55 (2004), limits failure to act claims under § 706(1) of the APA. The plaintiffs challenged the Bureau of Land Management ("BLM") for failing to take action with regard to off-road vehicle use

in wilderness study areas. *Id.* at 61. The Supreme Court evaluated the limits that the APA places upon judicial review of agency inaction.

The Supreme Court noted that agency action is defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent thereof, *or failure to act*." *Id.* at 62 (emphasis in original) (quoting 5 U.S.C. § 551(13)). The Supreme Court cited the definitions of these categories to conclude that they "involve circumscribed, discrete agency actions." *Id.*

The Supreme Court interpreted the final term in the definition – "failure to act" – as "a failure to take an agency action," that is, "a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." *Id.* A "failure to act" differs from a "denial." *Id.* at 63. The Supreme Court equated a "denial" with the agency's act of saying no to a request. *Id.* By contrast, a "failure to act" constitutes "the omission of an action without formally rejecting a request," such as the "failure to promulgate a rule or take some decision by a statutory deadline." *Id.* The Supreme Court emphasized that "a failure to act" properly must be understood to be limited, similar to the other items in § 551(13), "to a *discrete* action." *Id.* (emphasis in original).

The Supreme Court added a final requirement to its analysis of "failure to act" claims. Action "legally *required*" represents the only agency action that can be legally compelled pursuant to the APA. *Id.* (emphasis in original). Section 706(1)'s

10

authorization for courts to "compel agency action *unlawfully* withheld" supports this interpretation. *Id.* (quoting 5 U.S.C. § 706(1)). This provision carried forward the previous practice of the use of mandamus under the All Writs Act. *Id.* Courts normally limited the mandamus remedy to the enforcement of "a specific, unequivocal command," or the ordering of a "precise definite act . . . about which [an official] had no discretion whatever." *Id.* (first quoting *ICC v. New York, N.H. & H.R. Co.*, 287 U.S. 178, 204 (1932), then *United States ex. rel. Dunlap v. Black*, 128 U.S. 40, 46 (1888)).

The Supreme Court dismissed the notion of expanding the scope of § 706(1) to claims similar to "the kind of broad programmatic attack" that it had rejected in *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990). *Id.* at 64. Again citing *Lujan*, the Supreme Court noted "respondent cannot seek *wholesale* improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." *Id.* (quoting *Lujan*, 497 U.S. at 891). The Supreme Court explained that the limitation of § 706(1) allows a court the narrow ability to "compel the agency to act, but has no power to specify what the action must be." *Id.* at 65.

*SUWA* provided the example of a potentially valid "failure to act" claim in a hypothetical challenge to 47 U.S.C. § 251(d)(1). *SUWA*, 542 U.S. at 65. This provision requires the Federal Communications Commission "to establish

11

regulations to implement" interconnection requirements "[w]ithin 6 months" of the date of enactment of the Telecommunications Act of 1996. *Id.* This provision would support a judicial decree under the APA to require simply the prompt issuance of a set of regulations. The Supreme Court noted that this provision would not support a judicial decree "setting forth the content of those regulations." *Id.*

The Supreme Court determined that plaintiffs' allegations regarding the BLM's management amounted to "general deficiencies in compliance" and that the obligations "lacked the specificity requisite for agency action." *Id.* at 66-67. *SUWA* cited the limitations in the APA that protected agencies from "[t]he prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives." *Id.* at 67.

Other courts that have rejected failure to act challenges under § 706(1) addressed broad attacks on an agency's management of an issue. For example, the Ninth Circuit in *Ecology Center, Inc. v. U.S. Forest Service*, 192 F.3d 922, 923 (9th Cir. 1999), reviewed a district court's dismissal of an APA claim under § 706(1) that sought to compel the Forest Service to comply with certain monitoring duties in Kootenai National Forest. *Id.* The plaintiff argued "that because the Forest Service has continuously failed to meet its monitoring duty required under the Plan, it has in effect unlawfully withheld or unreasonably delayed performing a mandatory responsibility." *Id.* at 926. The Ninth Circuit rejected this argument. It

12

"refused to allow plaintiffs to evade the finality requirement with complaints about the sufficiency of an agency action 'dressed up as an agency's failure to act.'" *Id.* (quoting *Nevada v. Watkins*, 939 F.2d 710, 714 n.11 (9th Cir. 1991)). Whether the action that the Forest Service had taken complied with the statute remained the question presented. The plaintiff had "not pleaded a genuine § 706(1) claim." *Id.*

Plaintiffs in *Hells Canyon Preservation Council v. U.S. Forest Service*, 593 F.3d 923, 932 (9th Cir. 2010), asserted a failure to act challenge under § 706(1) when they claimed that the Forest Service had failed to prohibit the use of motorized vehicles in wilderness areas as required by statute. *Id.* The Forest Service had closed trails within the boundaries of what it considered to be the wilderness area. The Ninth Circuit interpreted plaintiffs' claim as a challenge to the Forest Service's decision as to where to set the wilderness area boundaries rather than a failure to comply with the statutory duty to close the trails within the wilderness area. *Id.* Section 706(1) "serves important interests, but does not give us license to 'compel agency action' whenever the agency is withholding or delaying an action we think it should take." *Id.* Rather, the ability to compel agency action "is carefully circumscribed to situations where an agency has ignored a specific legislative command." *Id.* The Ninth Circuit determined that plaintiffs had failed to state a claim under § 706(1). *Id.* at 930-33.

Not all challenges under § 706(1) prove unsuccessful, however, as evidenced by the Ninth Circuit's decision in *Vietnam Veterans of America v. Central Intelligence* Agency, 811 F.3d 1068, 1075-76 (9th Cir. 2016), to uphold an injunction that required the Army to warn former test subjects of the effects of chemical weapon test programs and provide medical care for those test subjects. The Army's failure to provide notice and medical care as required by its own regulations supported a "failure to act" challenge under § 706(1). *Id.* at 1082-82. The Ninth Circuit acknowledged that § 706(1) "poses an obstacle for parties seeking to compel agency action." *Id.* at 1078. The Ninth Circuit concluded, however, that "section 706(1) applies to the situation where a federal agency refuses to act in disregard of its legal duty to act." *Id.* at 1079 (quotations omitted).

Distinguishing *SUWA*, the Ninth Circuit determined that "Plaintiffs have alleged both a legal duty to perform a discrete agency action and a failure to perform that action." *Id.* The Ninth Circuit focused on whether there existed a discrete action that the agency legally was required to take. Little question existed that the Army had failed to perform certain duties as required by its own regulations. *Id.* Plaintiffs could proceed with a failure to act claim under § 706(1). *Id.*; *see also Californians for Renewable Energy v. United States Environmental Protection Agency*, 2018 WL 1586211 (N.D. Cal. 2018) (determining that plaintiffs' challenge to EPA's failure to comply with the regulatory requirement to

14

make preliminary findings regarding alleged Title VI violations within 180 days of accepting a complaint for investigation qualified as a failure to act claim under § 706(1)).

The Ninth Circuit dismissed the Army's interpretation of its regulation that the duty to notify was ambiguous and applied only to individuals whose experiments were performed after 1988. *Vietnam Veterans*, 811 F.3d at 1076. The Army's interpretation contradicted the plain language of its regulations. *Id.* The Ninth Circuit declined to grant deference to the Army's interpretation of its regulation, pursuant to *Auer v. Robbins*, 519 U.S. 452 (1997), because there was "reason to suspect that the agency's interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Id.* at 1077-78 (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)). A court can look more critically at an agency's interpretation when "it appears that the interpretation is nothing more than a 'convenient litigation position.'" *Id.* (quoting *Christopher*, 567 U.S. at 155).

These cases highlight the inherent tensions in analyzing § 706(1) failure to act challenges. Courts stand "well-suited to reviewing specific agency decisions, such as rulemakings, orders, or denials." *City of New York v. U.S. Dep't of Defense*, 913 F.3d 423, 431 (4th Cir. 2019). The Fourth Circuit recognized that courts "are woefully ill-suited, however, to adjudicate generalized grievances

15

asking us to improve an agency's performance or operations." *Id.* Doing so would force courts "either to enter a disfavored 'obey the law' injunction, or to engage in day-to-day oversight of the executive's administrative practices." *Id.* (internal citation omitted). The Fourth Circuit applied this analysis in rejecting an effort by three cities under § 706(1) to compel the Department of Defense to comply fully with its duty to provide records to the National Instant Criminal Background Check System. *Id.* at 432-433.

The principles that emerge from these cases demonstrate that the APA provides a "scheme allowing courts to review only those acts that are specific enough to avoid entangling the judiciary in programmatic oversight, clear enough to avoid substituting judicial judgments for those of the executive branch, and substantial enough to prevent an incursion into internal agency management." *City of New York*, 913 F.3d at 432 (citing *SUWA*, 542 U.S. at 64-65). *City of New York* and *SUWA* analyzed whether the alleged agency action, or inaction, qualified as "discrete." *City of New York,* 913 F.3d at 432-434; *SUWA*, 542 U.S. at 66-67. The principles and reasoning apply with similar force to the question of whether there exists a genuine failure to act by the agency.

Ultimately, § 706(1) presents a narrow avenue of relief when an agency refuses to act in the face of a discrete, legally required duty. Federal Defendants argue that PHMSA has not *ignored* entirely the congressional mandates under the

16

MLA or the PSA. Wildearth claims that PHMSA has failed—and is required to prove—actual compliance with its regulations. The Court remains concerned that Wildearth's argument would require it to rewrite § 706(1) of the APA to replace *action* with *compliance*. The Court now will examine more carefully the regulations at issue.

### 3. Analysis

The Court agrees that the directive contained in § 185(w)(3) of the MLA appears unequivocal and broad. The legislative history supports an understanding that § 185(w)(3)'s directive toward the Department of Transportation serves as a check on the "oil-industry-dominated Interior Department." 93 Cong. Rec. H 9816 (daily ed. Nov. 12, 1973). No exceptions exist to the statutory directive to cause the annual inspection of pipelines that cross federal land in the MLA. The PSA contains several exceptions to pipeline inspections. *See, e.g.*, 49 U.S.C. § 60101(a)(21) (excluding rural gathering lines). The resulting statutory duty required by the MLA appears more expansive than the statutory duty contained in the PSA. The Court questions how the MLA's more expansive duty "lack[s] the specificity requisite for agency action." *SUWA*, 542 U.S. at 66-67.

These differing duties demonstrate that compliance with the PSA *does not* necessarily equate with compliance with the MLA. *See, e.g., K.M. ex rel. Bright v.*

17

*Tustin Unified School Dist.*, 725 F.3d 1088, 1092, 1100 (9th Cir. 2013) (rejecting notion that compliance with the Individuals with Disabilities Act resulted in per se compliance with the Americans with Disabilities Act). The statutory duties contained in the MLA prove more expansive than the directives contained in the PSA. The MLA exempts *no* pipelines from the inspection requirement. PHMSA may be right that it possesses the discretion to make agency determinations on what qualifies as a pipeline. PHMSA has failed to provide any record, however, to demonstrate how, when, or why it made that decision. The Court remains concerned with the apparent lack of a procedure by which a citizen, interest group, or even the Court itself could determine whether PHMSA has caused annual inspections of all pipelines that cross federal land and the results of those inspections as required by § 185(w)(3). PHMSA has failed to file record evidence that would provide proof of pipeline inspections on federal land.

The Court agrees with Wildearth that "[a]ny action vaguely related to the duty at issue does not automatically satisfy the statutory mandate; instead the action must necessarily be informed by the specific nondiscretionary duty at issue as well as the statute's purpose." (Doc. 47 at 5). Wildearth presents a strong case that PHMSA's regulations fail to satisfy its statutory duty under § 185(w)(3). PHMSA's regulations more than "vaguely relate," however, to the duty at issue. (Doc. 47 at 5). The duty at issue remains whether PHMSA has promulgated

18

regulations to address directly its statutory duty under the MLA to cause the inspections of pipelines.

PHMSA has promulgated regulations that require inspections of certain types of pipelines on federal land. *See, e.g.*, 49 C.F.R. §§ 192.706, 192.705, 195.412(a). PHMSA recently has added a citation to § 185(w)(3) to its regulations to support its claim that the regulations implement the directives in the MLA. 84 Fed. Reg. at 52,289–90. It does not appear that PHMSA has attempted to remedy this failure to cause the inspection of all pipelines since the Secretary of Transportation testified before Congress in 1979 beyond this feeble effort to add a citation to the specific section of the MLA.

PHMSA has also rejected a proposal to extend its inspection requirements to more types of pipelines. (Doc. 39-2, AR 1599-600 (gas); AR 2700 (hazardous liquid)). This decision to reject extended inspection requirements also could qualify as some sort of a "denial" as explained in *SUWA*. *SUWA*, 542 U.S. at 63. The Supreme Court deemed a "formal rejection of a request" to constitute an agency action. *Id.* PHMSA's consideration of extending inspection requirements could be construed as a "formal[] rejecti[on]" of an action—in the form of extending inspection requirements for all gathering lines. *Id.*

19

The Court must acknowledge that the agency has taken some steps, limited as they may be, to address its statutory obligation to cause the annual inspection of all pipelines that cross federal land. Wildearth challenges, in effect, the scope and details of these limited steps in the form of existing regulations. An appropriate challenge does not lie under the failure to act provision of § 706(1). The appropriate challenge to whether PHMSA has fulfilled its statutory duties would lie under § 706(2): "to hold unlawful or set aside agency action . . . not in accordance with law." 5 U.S.C. §706(2).

Wildearth relies on several cases to advance its argument that the Court is empowered to compel agency action unlawfully withheld under § 706(1). *Vietnam Veterans* provides support for Wildearth's failure to act claim at first glance. This support proves particularly true when noting PHMSA's addition of the citation to § 185(w)(3) in recent rulemaking. *See Vietnam Veterans*, 811 F.3d at 1077-78 (declining to defer to agency when "it appears that the [agency's] interpretation is nothing more than a 'convenient litigating position'"). A closer look at the district court's order in *Vietnam Veterans*, however, provides support for the Court's conclusion that Wildearth's claim does not properly belong under § 706(1).

The district court classified the plaintiff's challenge to the content of notice letters sent to servicemen as a challenge to the *adequacy* of the Army's compliance with its duty to warn. *Vietnam Veterans of America v. Central Intelligence Agency*,

20

2013 WL 6092031, at *18 (N.D. Cal. November 19, 2013). The district court concluded that the challenge to the notice letters was "not brought properly under § 706(1)" because the Army had "sen[t] notice letters to former servicemen with information about their testing." *Id.* As a result, the "challenge [was] to *how* Defendants carried out their duty, not whether they did so at all." *Id.*

By contrast, the district court characterized plaintiffs' challenge to the Army's failure to comply with its on-going duty to warn as a failure to act: "[t]here is no material dispute of fact that the Army is not doing this on an ongoing basis." *Id.* The plaintiffs did "not challenge the sufficiency of agency action and properly attack the Army's failure to act" with regard to its duty to warn under § 706(1). *Id.* The Ninth Circuit affirmed the district court's injunction regarding the Army's on-going duty to warn.

PHMSA has promulgated regulations that cause the inspection of pipelines crossing federal lands—albeit not to the extent Wildearth asserts complies with PHMSA's statutory duty under § 185(w)(3). Similar to the challenge to the content of the notice letters in *Vietnam Veterans*, Wildearth ultimately challenges "*how* Defendants carried out their duty, not whether they did so at all." *Vietnam Veterans*, 2013 WL 6092031, at *18. The question of how Federal Defendants have carried out their duty under § 185(w)(3) does not present a limited "failure to act" claim under § 706(1). *See Ecology Center*, 193 F.3d at 926.

21

Another implicit distinction exists between Wildearth's challenge and the challenge in *Vietnam Veterans*. PHMSA plausibly argues that the agency uses its discretion to promulgate regulations that comply with the requirements of § 185(w)(3). (Doc. 44 at 8-9). How to define "pipelines" and "associated facilities," as contemplated under § 185(w)(3), and what constitutes "examination" and "prompt reporting" necessarily involve technical agency knowledge. *See Chevron, U.S.A., Inc. v. Nat. Resources Def. Council, Inc.*, 467 U.S. 837, 865-66 (1984). The question of how to answer these questions could afford PHMSA more discretion under § 185(w)(3) than the Army possessed under its own straight-forward regulation. *Vietnam Veterans*, 2013 WL 6092031, at *18

Wildearth also relies on *Natural Resources Defense Council, Inc., v. James R. Perry*, 2019 WL 5076950 at *4 (9th Cir. 2019) ("*NRDC*") and *Oregon Nat. Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 983 (9th Cir. 2006) ("*ONDA*"). These cases prove unavailing. The Ninth Circuit assessed in *NRDC* whether an agency had performed a non-discretionary duty under a statute that allowed a citizen suit when "there is an alleged failure of such agency to perform an act or duty under this part which is not discretionary." *NRDC*, 940 F.3d at 1076 (quoting 42 U.S.C. § 6305(a)(2)). At most, *NRDC* shed some light into what constitutes non-discretionary duties as the Ninth Circuit never analyzed a "failure to act" claim under § 706(1). Similarly, *ONDA* addressed whether the Forest Service's

22

Annual Operating Instructions to grazing permit holders constituted a final agency action subject to review under § 706(2)(A). *ONDA*, 465 F.3d at 990. *ONDA* did not analyze a "failure to act" claim under § 706(1).

PHMSA has contended, since at least 1979, that it is complying with § 185(w)(3) of the MLA. Congress has taken no apparent steps to address the apparent disregard for its mandate in the MLA for the Secretary of Transportation to cause the annual inspection of all pipelines that cross federal land. 30 U.S.C. § 185(w)(3); *see Org. for Competitive Markets v. U.S. Dep't of Agric.*, 912 F.3d 455, (8th Cir. 2018) (rejecting § 706(1) challenge because USDA promulgated regulations in an effort to comply with an ambiguous congressional directive and noting Congress could "take appropriate action"). These factors, along with the directive in *SUWA* to avoid judicial interference with agency discretion in carrying out its duties, reluctantly leads the Court to conclude that Wildearth does not present a genuine "failure to act" challenge. *SUWA*, 542 U.S. at 67.

Wildearth finally points to *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 957 (9th Cir. 2012), to support its claim that PHMSA is required to strictly comply with § 185(w)(3). (Doc. 47 at 2). *Trinidad y Garcia* involved a detainee who petitioned for a writ of habeas corpus after the Secretary of State had decided to surrender him to authorities in the Philippines to face criminal charges. *Id.* at 955. The detainee alleged that his extradition would violate several statutory and

constitutional rights. *Id.* The Ninth Circuit concluded that "[detainee's] liberty interest under the federal statute and federal regulations entitles him to strict compliance by the Secretary of State with procedure outlined in the regulations." *Id.* at 957. Wildearth possesses no liberty or property interest in PHMSA's strict compliance with its statutory and regulatory duties similar to the detainee's liberty interest at issue in *Trinidad y Garcia*.

The cases where courts have entered an injunction remedying an agency's failure to act explain the narrow scope of § 706(1) and generally present challenges to an agency's failure to comply with an absolute, non-discretionary duty that involves a time limit of the type posed in the hypothetical in *SUWA*, 542 U.S. at 65. For example, in *South Carolina v. United States*, the district court found that it was undisputed that the Secretary of Energy had failed to remove one metric ton of defense plutonium from South Carolina by January 1, 2016. *South Carolina v. United States*, 243 F.Supp.3d 673, 695 (D.S.C. March 20, 2017). The district court also found that the Secretary had a non-discretionary duty to remove the plutonium. *Id.* The district court concluded it had to enter an order compelling the Secretary to remove the plutonium. *Id.* ("When an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action" (citation and alterations omitted)); s*ee Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, 1170 (9th Cir. 2002) (twelve-month final

24

listing deadline in ESA); *Gonzalez Rosario v. U.S. Citizenship and Immigration Servs.*, 365 F.Supp.3d 1156 (W.D. Wash. 2018) (30-day regulatory deadline for adjudicating employment authorization); and *Californians for Responsible Energy v. U.S. EPA*, 2018 WL 1586211 (N.D. Cal. March 30, 2018) (180-day deadline for making preliminary findings regarding Title VI violations).

The weight of the court decisions regarding failure to act challenges, *Vietnam Veterans* notwithstanding, leans in the direction of Federal Defendants. *SUWA*, 542 U.S. at 64-65; *Ecology Center*, 192 F.3d at 923; *Hells Canyon*, 593 F.3d at 929. Wildearth's challenge stands more similar to the "widespread and systemic" or "broad programmatic" challenges in *City of New York* and *SUWA* than in cases where an "official has no discretion" and the failure to act could be remedied by a court's straightforward injunction. *Compare SUWA*, 542 U.S. at 64, and *City of New York*, 913 F.3d at 433, *with South Carolina v. United States*, 907 F.3d 742 (2018); (*see, e.g.* Doc. 40 at 9 "PHMSA has provided no record evidence that it has ever caused the annual examination of any pipelines on federal lands"). Wildearth's allegations that PHMSA has "continuously failed" to meet its pipeline examination duty under the MLA does not result in "a genuine §706(1) claim" of the clear deadline for action type cases. *Ecology Center*, 192 F.3d at 926. Ultimately, the APA "does not empower a court to supervise an agency's

compliance with a broad statutory mandate." *City of New York v. United States Dep't. of Def.*, 2018 WL 1937347, at *3 (E.D. Va. April 24, 2018).

The cases that interpret § 706(1) suggest that an agency's action in furtherance of complying with a statute, regardless of how feeble, removes a challenge to the agency's conduct from the realm of § 706(1) and into the arbitrary and capricious or contrary to law review of § 706(2). *Hells Canyon*, 593 F.3d at 932. To ignore PHMSA's action taken in an attempt to comply with its statutory duties would eliminate the difference between the "narrow" failure to act challenge under § 706(1) and a challenge to agency action as arbitrary and capricious or contrary to law under § 706(2). To eliminate this distinction potentially would expand a court's injunctive power regarding the specifics of agency administration beyond the intent of the APA. *SUWA*, 542 U.S. at 66.

An attempt to assess whether PHMSA has complied with its duties under § 185(w)(3) for specific pipelines or types of pipelines could entangle the Court into managing the specifics of agency compliance with § 185(w)(3). The Court has a difficult time envisioning an injunction to remedy Wildearth's grievances that would not violate the specific warning in *SUWA* that a court "has no power to specify what the action must be" nor "set forth the content of [ ] regulations." *SUWA*, 542 U.S. at 65. In a similar vein, the Ninth Circuit recognized in *Ecology Center* that it would discourage the Forest Service from producing ambitious forest

26

plans if it were "to hold the Forest Service liable under § 706(1) for each oversight." *Ecology Center*, 192 F.3d at 926.

The record demonstrates that PHMSA has taken some action in the form of issuing rules that allow for the inspection and examination of certain pipelines. These regulations appear to fall well short of causing the annual inspection of all pipelines on federal land. 30 U.S.C. § 185(w)(3). The reasoning applied in *Ecology Center* proves analogous in that Wildearth cannot challenge the sufficiency of PHMSA's regulations enacted to satisfy MLA's statutory mandate under a failure to act challenge pursuant to § 706(1). *Ecology Center*, 192 F.3d at 926.

The Court fully acknowledges the difficult position in which PHMSA's regulations place Wildearth, and any other concerned citizen. PHMSA's current regulations, on their face, do not appear to fulfill the statutory duty in § 185(w)(3) and, even for the pipelines for which PHMSA does cause inspections, it cannot provide records to demonstrate compliance. The Court sees no clear path forward, however, when PHMSA has promulgated regulations that at least attempt to comply with its statutory duties. Whether and how PHMSA is complying with its statutory duties does not present a question appropriate for resolution under the narrow failure to act provision of § 706(1).

**CONCLUSION**

The Court possesses jurisdiction to hear Wildearth's alleged failure to act challenge under § 706(1). (Doc. 30 at 22-24). Wildearth possesses standing to challenge Federal Defendant's alleged failure to act under § 706(1), as it has satisfied the three necessary elements. *See WildEarth Guardians*, 795 F.3d at 1154. The Court reluctantly concludes, however, that it cannot compel agency action as being unlawfully withheld under § 706(1) under the circumstances presented here. The Court cannot ignore the fact that "[e]ven if a court believes that the agency is withholding or delaying an action the court believes it should take, the 'ability to compel agency action is carefully circumscribed to situations where an agency has *ignored* a specific legislative command.'" *Gardner v. U.S. Bureau of Land Mgmt.,* 638 F.3d 1217, 1221–22 (9th Cir. 2011) (emphasis added) (quoting *Hells Canyon,* 593 F.3d at 932).

The Court's conclusion that no genuine failure to act exists entitles Federal Defendants to summary judgment on Wildearth's "failure to act" claim under § 706(1). The Court limits its grant of summary judgment to agreeing with Federal Defendants that Wildearth does not properly bring its challenge as a failure to act claim under § 706(1).

**ORDER**

28

Accordingly, it is **ORDERED** that Federal Defendants' Cross Motion for Summary Judgment (Doc. 45) is **GRANTED**.

It is **FURTHER ORDERED** that Wildearth Guardian's Motion for Summary Judgment (Doc. 40) is **DENIED**.

DATED this 15th day of April, 2020.

Brian Morris, Chief District Judge
United States District Court